MATH P. GILLEN AND ANOTHER v.
COMMISSIONER OF TAXATION.

232 N. W. 2d 894.

August 22, 1975—No. 44747.

*Math P. Gillen,* pro se, for relators.

*Warren Spannaus,* Attorney General, and *C. H. Luther,* Deputy Attorney General, for respondent.

---

Heard before Rogosheske, Kelly, and Yetka, JJ., and considered and decided by the court en banc.

PER CURIAM.

Relators, Math P. and Gladys R. Gillen, seek review of an order of the Minnesota Tax Court granting increased sick-pay exclusions from their 1967, 1968, and 1969 gross income in an amount greater than allowed by the commissioner of taxation but less than claimed in amended tax returns.[1]

Relator Math Gillen was hospitalized in 1967 for a ruptured aorta, a condition which caused him to be disabled and unable to work for 6 months. Further periods of disability during 1968 and 1969 caused his employer to place him on permanent pension. During the periods of disability, Gillen received wages in the form of sick pay from his employer in the following amounts:

| 1967 | $6,956.75 |
| 1968 | 3,250.00 |
| 1969 | 2,600.00 |

When relators filed their Minnesota income tax returns for those years, they claimed maximum sick-pay exclusions of $100 weekly, subject to an initial 30-day waiting period, as provided by Minn. St. 1969, § 290.01, subd. 20.[2] This law incorporated by reference the then-existing Federal definition of gross income, 26 USCA, § 105(d).[3]

---

[1] Writ of certiorari to review the decision of the Tax Court pursuant to Rule 115, Rules of Civil Appellate Procedure, was granted November 21, 1973.

[2] Minn. St. 1969, § 290.01, subd. 20, provides in part: * * * The term 'gross income' in its application to individuals, estates and trusts means the adjusted gross income as computed for federal income tax purposes as defined in the laws of the United States for the taxable year with the modifications specified in this section."

[3] 26 USCA, § 105(d), 68A Stat. 31, as amended in 1964 by 78 Stat. 38, provides: "Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but *this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100. The preceding sentence shall not apply to amounts attributable to the first 30 calendar days in such period,* if such amounts are at a rate which exceeds 75 percent of the regular weekly rate of wages of the employee

However, in 1971 relators filed amended tax returns for 1967, 1968, and 1969, excluding all sick pay from gross income, in reliance on Minn. St. 290.08, subd. 5(a).[4] The commissioner of taxation in separate orders denied relators' exclusion of all sick pay, but allowed an exclusion for each year in accordance with 26 USCA, § 105(d), in the following amounts:

| | |
|---|---|
| 1967 | $2,200.00 |
| 1968 | 1,995.00 |
| 1969 | 1,720.00 |

These were the amounts deducted by relators on their original returns.

Relators appealed to the 'Tax Court, which increased the amount of sick pay which could be excluded in those years. The Tax Court held that Minn. St. 1969, § 290.01, subd. 20, adopted by reference the 1961 rather than the 1964 Internal Revenue Code definition of gross income, a definition which did not contain the 30-day restriction.[5]

(as determined under regulations prescribed by the Secretary or his delegate). If amounts attributable to the first 30 calendar days in such period are at a rate which does not exceed 75 percent of the regular weekly rate of wages of the employee, the first sentence of this subsection (1) shall not apply to the extent that such amounts exceed a weekly rate of $75, and (2) shall not apply to amounts attributable to the first 7 calendar days in such period unless the employee is hospitalized on account of personal injuries or sickness for at least one day during such period. If such amounts are not paid on the basis of a weekly pay period, the Secretary or his delegate shall by regulations prescribe the method of determining the weekly rate at which such amounts are paid." (Italics supplied.)

[4] Minn. St. 290.08, subd. 5(a), as amended by L. 1967, c. 900, § 1, provides: "[The following items shall not be included in gross income:] Amounts received as compensation for personal injuries or sickness by the injured or sick taxpayer, whether received under accident or health insurance contracts, workmen's compensation acts, any plan maintained by employers for such purpose, or by way of damages received in any suit or by agreement."

[5] In 1961, 26 USCA, § 105(d), 68A Stat. 31, provided: "Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100. In the case of a period during

In this court relators still contend that they are entitled to exclude all sick pay from their Minnesota gross income. We affirm the decision of the Tax Court.

The answer to relators' challenge to the Tax Court's determination lies in finding which statutory provision controls how much sick pay may be excluded from Minnesota gross income in the years 1967 to 1969.

Relators place their reliance on Minn. St. 290.08, subds. 1 and 5(a). From the time these provisions were first enacted in 1933, until 1957, the statute read as follows:

"[Subdivision 1.]   The following items shall not be included in gross income:

\* \* \* \* \*

"[Subd. 5(a).]   Amounts received as compensation for personal injuries or sickness by the injured or sick taxpayer, whether received under accident or health insurance contracts, workmen's compensation acts, any plan maintained by employers for such purpose, or by way of damages received in any suit or by agreement \* \* \*."[6]

Then in 1957, certain wording was added,[7] later dropped in

which the employee is absent from work on account of sickness, the preceding sentence shall not apply to amounts attributable to the first 7 calendar days in such period unless the employee is hospitalized on account of sickness for at least one day during such period. If such amounts are not paid on the basis of a weekly pay period, the Secretary or his delegate shall by regulations prescribe the method of determining the weekly rate at which such amounts are paid."

[6] L. 1933, c. 405, § 12.

[7] Minn. St. 1957, § 290.08, subd. 5(a), as amended by L. 1957, c. 889, § 1, provided: "[The following items shall not be included in gross income:] Amounts received as compensation for personal injuries or sickness by the injured or sick taxpayer, whether received under accident or health insurance contracts, workmen's compensation acts, any plan maintained by employers for such purpose, or by way of damages received in any suit or by agreement; *provided, that any such amounts received as wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness shall be excluded from gross income to the extent that such amounts do not exceed a weekly rate of $100. In the case of a period during which the employee is absent from work on account of sickness, the preceding clause shall not apply to amounts attributable to the first 7 calendar days in such period unless the employee is*

1967.[8] Thus, subd. 5(a) reads today the same as it did in 1933. Relators contend that the 1967 amendment to § 290.08, subd. 5(a), removed all restrictions on sick-pay exclusions, including the $100 weekly maximum.

We agree with the position taken by the commissioner and the Tax Court that § 290.08, subd. 5(a), does not apply to the category of income such as sick-pay wages. This section refers specifically to accident and health insurance payments, workmen's compensation benefits, and proceeds from lawsuits and settlements. Following the 1967 amendment, sick-pay wages were no longer covered by the statute. An attempt to lump sick pay in with any of the above types of income does violence to the intent of the legislature when it dropped sick pay as an item not included in Minnesota gross income.

The apparent reason for the 1957 addition was to conform subd. 5(a) to the then-existing Federal definition of adjusted gross income.[9] Then in 1961, when the legislature amended § 290.01, subd. 20, adopting the Federal definition of gross income, § 290.08, subd. 1, was amended to read:

"Subdivision 1. The following items shall not be included in gross income, *provided that the amount of any item which was excluded in arriving at gross income under the provisions of section 290.01, subdivision 20, shall not be again excluded under this section.*" (Italics indicating 1961 amendment supplied.)[10]

The amount of sick pay excludable in arriving at Minnesota gross income was defined in 26 USCA, § 105(d), pursuant to Minn. St. 1969, § 290.01, subd. 20. Thus, Minn. St. 290.08, subd. 5(a), with respect to sick pay, was rendered inoperative according to the very terms of § 290.08, subd. 1. In 1964, Congress amended the Federal definition of adjusted gross income, adding the 30-day restriction.[11] Since the latter portion of § 290.08, subd. 5(a), was inconsistent with the 1964 version of 26 USCA, § 105(d), the 1967 amendment deleted the language originally added in 1957.

---

*hospitalized on account of sickness for at least one day during such period. If such amounts are not paid on the basis of a weekly pay period, the Commissioner shall by regulation prescribe the method of determining the weekly rate of which such amounts are paid.*" (Italics indicating 1957 amendment supplied.)

[8] Footnote 4, *supra.*

[9] Footnote 5, *supra.*

[10] L. 1961, c. 213, Art. IV, § 2.

[11] Footnote 3, *supra.*

All this legislative history is a means of showing clearly that since 1961 the sick-pay exclusion has been governed by Minn. St. 1969, § 290.01, subd. 20, rather than Minn. St. 290.08, subd. 5(a). Therefore, relators' claim for exclusion of all sick pay must fall, since § 290.08 does not apply to the wages in question.

We have already referred to the action of the 1961 Minnesota Legislature defining gross income as the adjusted gross income as computed for Federal income tax purposes, Minn. St. 1969, § 290.01, subd. 20.[12] The commissioner contended before the Tax Court that subd. 20 had the effect of adopting all subsequent amendments to 26 USCA, § 105(d). If so, the 1964 Federal definition would apply to relators' tax returns, resulting in a lesser sick-pay exclusion, as originally ordered by the commissioner.

However, the Tax Court ruled against the commissioner on the basis of our decision in Wallace v. Commr. of Taxation, 289 Minn. 220, 184 N. W. 2d 588 (1971). There we held that the effect of Minn. St. 1969, § 290.01, subd. 20, was to adopt the Federal definition of adjusted gross income as it existed in 1961. Since the legislature could not lawfully delegate its authority to Congress with respect to *future* modifications or changes in the tax laws, the 1964 amendment to 26 USCA, § 105(d), adding the 30-day waiting period, was without force and effect on Minnesota law. Accordingly, the Tax Court increased the amount of sick pay which relators could exclude from 1967-1969 gross income since the more liberal 1961 version controlled.[13]

For the first time on appeal, the commissioner asserts that the Tax Court's decision must be reversed because of subsequent legislative enactments following Wallace. Following that decision, the 1971 Legislature passed L. 1971, cc. 769[14] and 771,[15] which in effect attempt to

---

[12] Footnote 2, *supra.*

[13] Footnote 5, *supra.*

[14] C. 769, § 1, in pertinent part reads as follows: "For each of the taxable years beginning after December 31, 1960 and ending prior to January 1, 1971, the term 'gross income' in its application to individuals, estates, and trusts, shall mean the adjusted gross income as computed for federal income tax purposes as defined in the Internal Revenue Code of 1954, as amended for the applicable taxable year, with the modifications specified in this section."

[15] C. 771, § 1, in pertinent part reads as follows: "The term 'gross income' in its application to individuals, estates and trusts means the adjusted gross income as computed for federal income tax purposes as de-

avoid the problem of future delegation of authority condemned in Wallace, while at the same time retaining the current Internal Revenue Code definition of adjusted gross income within § 290.01, subd. 20. Chapter 769 was a retroactive law which provided that for the years 1961 to 1970, Minnesota gross income shall be the Federal adjusted gross income for each respective year. The statute had the effect of going back and adopting all past amendments to the Federal tax laws. By doing so, the legislature gave the commissioner authority to apply the stricter 1964 Federal sick-pay exclusion to relators' returns.

While we agree with the commissioner that to apply c. 769 to this case would change the decision of the Tax Court, we are forced to affirm the decision below due to the conscious decision of the commissioner not to inform the Tax Court of the import of the statute on the factual situation presented. Although c. 769 was mentioned at the hearing, counsel for the commissioner informed the court and relators that they placed no reliance upon it. The Tax Court therefore made its decision based upon the state of the law as it existed immediately following the Wallace decision in March 1971 and prior to the enactment of c. 769. Thus, the authorities relied upon by the Tax Court in its decision became the law of the case which we must follow. Parties on appeal are bound by the theory upon which the case was tried. Bartholet v. Berkness, 291 Minn. 123, 189 N. W. 2d 410 (1971); 1B Dunnell, Dig. (3 ed.) § 384. This theory becomes the "law of the case," and a party cannot shift positions and adopt a new theory on appeal. Crawford v. Woodrich Const. Co. Inc. 239 Minn. 12, 57 N. W. 2d 648 (1953); 1B Dunnell, Dig. (3 ed.) § 401.

Since the commissioner has not filed a notice of review under Rule 106, Rules of Civil Appellate Procedure, he cannot ask for a change in the Tax Court's decision due to an alleged error of law which he himself invited. Majerus v. Guelsow, 262 Minn. 1, 113 N. W. 2d 450 (1962). It is for these reasons that we affirm the Tax Court's application of the sick-pay exclusion from gross income based upon 26 USCA, § 105(d), in effect in 1961. Because we do not consider the effect of L. 1971, c. 769, upon relators' tax payments, we need not reach their argument that c. 769 is unconstitutional as being ex post facto legislation.

The order of the Tax Court increasing the amount of sick pay excludable from gross income on relator's amended 1967, 1968, and 1969 Minnesota income tax returns is affirmed.

Affirmed.

---

fined in the Internal Revenue Code of 1954, as of January 1, 1971, with the modifications specified in this section."