**Robert HASNUDEEN and Tracy Hines, Appellants,**

v.

**ONAN CORPORATION, Respondent.**

**No. CX–94–2106.**

Supreme Court of Minnesota.

Aug. 29, 1996.

Bassford, Lockhart, Truesdell & Briggs, P.A., John M. Anderson, Charles E. Lundberg, Minneapolis, for Appellants.

Felhaber, Larson, Fenlon & Vogt, P.A., Richard A. Beens, Brad J. Miller, Minneapolis, for Respondent.

David Y. Trevor, Dorsey & Whitney P.L.L.P., Minneapolis, for Amici Curiae, Minnesota Chamber of Commerce, Greater Minneapolis Chamber of Commerce, Employers Association, Inc.

Douglas A. Hedin, Andrea F. Rubenstein, Minneapolis, for Amicus Curiae, Minnesota Chapter National Employment Lawyers Association.

## OPINION

COYNE, Justice.

We granted the petition of defendant Onan Corporation for further review of a decision of the court of appeals for the limited purpose of clarifying the relationship between this court's analysis in *Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619 (Minn.1988) and the pronouncement of the United States Supreme Court in *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2751–52, 125 L.Ed.2d 407 (1993) in the context of the claims of plaintiffs Robert Hasnudeen and Tracy Hines that under the Minnesota Human Rights Act, Minn.Stat. § 363.03 (Supp.1989), the termination of their employment was unlawful.

After a trial to the court, judgment was entered in favor of the defendant-employer Onan Corporation upon the district court's determination that the plaintiffs had failed to sustain their ultimate burden of persuasion that their discharge from employment was discriminatory. In a split decision, a majority of the court of appeals' panel held that the trial court had improperly applied the third step of the three-part test enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and that the trial court's finding that there was no discrimination was clearly erroneous. *Hasnudeen v. Onan Corp.*, 531 N.W.2d 891 (Minn.App.1995). We reverse and reinstate the judgment entered in favor of the defendant Onan Corporation.

The facts underlying the discriminatory discharge claims are detailed in the court of appeals' opinion. Summarily, these employees, one of East Indian ancestry and the other half Native American, began a dating relationship and were subjected by coworkers to an uncomfortable and "racially charged atmosphere" at their place of employment. On March 24, 1989, the plaintiffs engaged in a shouting dispute which escalated into apparent physical contact between them. The altercation took place in a glass-walled office in plain view of coworkers. An investigatory committee internally appointed by Onan ultimately determined to discharge both plaintiffs for violation of a company policy against physical fighting and Hasnudeen alone for lying during the investigation when he denied any physical confrontation with Hines.

In examining the plaintiffs' discrimination claims asserted under the Minnesota Human Rights Act, the trial court conducted the three-part *McDonnell Douglas* analysis, concluding, first, that the plaintiffs have sustained their burden of establishing a prima facie case of discrimination; second, that the defendant sustained the shifted burden of production to present evidence of a legitimate, nondiscriminatory reason for its actions; and third, that the plaintiffs failed to demonstrate that the employer's proffered reasons were in fact a pretext for discrimination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). *See,*

*also, Sigurdson v. Isanti County,* 386 N.W.2d 715 (Minn.1986).

■ This dispute centers on whether the trial court properly analyzed the third prong of the test. In this regard, the court of appeals concluded that, to the extent that the trial court relied upon language in *St. Mary's Honor Ctr. v. Hicks, supra,* and applied "the more rigid federal standard" than that approved by this court in *Anderson v. Hunter, Keith, Marshall & Co., supra,* its analysis was flawed and its decision must be reversed. The predicate for its holding was its apparent conclusion that *Hicks* utilized a "mixed motive" analysis which had been expressly rejected in *Anderson.* We are unable to identify any basis for that conclusion.

In our view neither the instant case nor *Hicks* is a "mixed-motive" case—one which arises when the court finds that an employment decision was based partly on legitimate motives and partly on unlawful ones. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). In *Hicks,* the trial court determined that the employer's proffered reasons were not the true reasons for the employee's demotion and discharge. *Hicks,* 509 U.S. at 508, 113 S.Ct. at 2747–48. It also found that the plaintiff failed to prove that race was the determining factor in the termination decision. Accordingly, there was no finding that the employment decision rested on "mixed motives."

The same observation may be made with regard to the matter before us. While the trial court acknowledged that the plaintiffs worked in a "racially-charged atmosphere" in which coworkers hurled racial epithets and derogatory comments about the dating relationship, it concluded that the lies of Hasnudeen and both plaintiffs' violation of the prohibition against fighting provided the sole bases for their termination—there was no "mixed motive."

Perhaps more pointedly, *Hicks* does not establish a more rigid analytical standard than we have in *Anderson.* The *Hicks* court merely emphasized that the plaintiff still bore the "ultimate burden" of persuading the factfinder by a preponderance of the evidence that the defendant discriminated against him because of his race. *Hicks,* 509

U.S. at 507, 113 S.Ct. at 2747. In *Anderson,* we similarly commented that with regard to the third prong of the test, the sole question is "whether or not the court is persuaded that the employee has been the victim of intentional discrimination." *Anderson,* 417 N.W.2d at 626. Under either standard, the plaintiff bears the final burden of demonstration that the proffered reason was not the true reason for the employer's actions.

In the matter before us, the trial court's use of the *Hicks* analysis was appropriate as an elaboration of the long-familiar third step of *McDonnell Douglas.*

■ The court of appeals also held that the trial court's finding that the plaintiffs were not discriminated against was clearly erroneous and warranted reversal. However, we have traditionally accorded great deference to a trial court's findings of fact because it has the advantage of hearing the testimony, assessing relative credibility of witnesses and acquiring a thorough understanding of the circumstances unique to the matter before it. *Sigurdson v. Isanti County,* 386 N.W.2d 715, 721 (Minn.1986). Where, as here, the matter rests largely on the credibility of the witnesses and the weight, if any, to be given their testimony, we are unable to conclude that the findings are clearly erroneous. Minn.R.Civ.P. 52.01 (1995).

We respond to the dissenting opinion because it leads the reader to believe that the trial court left a portion of the plaintiffs' claims unresolved. On the contrary, the trial court fully decided the matter as it was pled and tried—that is, that the defendant discriminated against the plaintiff Hasnudeen "in violation of Minn.Stat. § 363.03, subds. 1 and 7," and against plaintiff Hines "in violation of Minn.Stat. § 363.03, subd. 7." Apparently, the dissenting justice would retry this case for the plaintiffs on a new and different theory by generously and expansively re-drafting the complaint and amending the prayer for relief to add general claims of discrimination. The trial court properly declined to do so in deciding the plaintiffs' post-trial motions to that effect.

The trial court found that the plaintiffs "did indeed work in a racially-charged atmosphere," but although the "[p]laintiffs may have had the potential for a 'hostile work environment' claim," there is no evidence in the record to suggest that the defendant was notified or otherwise aware of the alleged conduct of the plaintiffs' coworkers or that any of Onan's supervisors or anyone in authority discriminated against the plaintiffs. Even crediting the evidence of the deplorable conduct, the plaintiffs made no showing of discrimination on the part of the defendant.

Moreover, in his order denying the plaintiffs' motion for amended findings or a new trial, the trial court directly addressed the plaintiffs' post-trial assertion that they had alleged a claim based on a hostile work environment:

> However, the real issue throughout the trial—the one which the parties actually litigated and argued—was whether defendant Onan *discharged* plaintiffs for improper reasons. Plaintiffs themselves, in the first sentence of their written final argument, stated that the plaintiffs "were unlawfully *discharged* by Onan Corporation ('Onan/Defendant') on account of their race and association." [Emphasis by the trial court.]

The court went on to say—

> [B]ecause plaintiffs lost on their claims of discriminatory discharge, they now appear to be asserting that they also had claims of hostile work environment. We cannot allow plaintiffs to re-characterize their claims and now assert a different theory.

As this court has stated on more than one occasion, litigants are bound on appeal by the theory, however erroneous or improvident, on which the action was actually tried. *E.g., Pomush v. McGroarty,* 285 N.W.2d 91, 93 (Minn.1979); *Gillen v. Commissioner of Taxation,* 305 Minn. 525, 232 N.W.2d 894 (1975); *John W. Thomas Co. v. Carlson–LaVine, Inc.,* 291 Minn. 29, 189 N.W.2d 197 (1971); *State v. Adams,* 251 Minn. 521, 89 N.W.2d 661, *cert. denied,* 358 U.S. 826, 79 S.Ct. 45, 3 L.Ed.2d 67 (1958). Like the trial court we can discern no basis for departing from this long-established principle.

Simply put, if there is a claim here, and this record indicates that there is none, the plaintiffs—not the trial court—should have asserted it.

Accordingly, we reverse the decision of the court of appeals and reinstate the judgment entered for defendant.

Reversed and judgment reinstated.

PAGE, Justice (concurring in part, dissenting in part).

Because it is not this court's role to substitute its judgment for that of the trial court and because it cannot be said with absolute certainty that the trial court abused its discretion in making the findings it did, I do not disagree with the court's analysis regarding Hasnudeen's and Hines' discharge claims. I write separately, however, to discuss the claims of harassment brought by Hasnudeen and Hines.

In addition to the claims of wrongful termination and reprisal, Hasnudeen and Hines allege in the complaint that Hasnudeen was subject to harassment at Onan because of his race, color, and national origin in violation of the Minnesota Human Rights Act and that Hines was subject to harassment at Onan because of her association with a person of a different race, color, and national origin in violation of the Minnesota Human Rights Act. They also allege that because of Onan's intentional acts, they were subject to severe mental anguish and suffering. Although the trial court specifically found that Hasnudeen and Hines "did indeed work in a racially-charged atmosphere," the trial court inexplicably failed to resolve their harassment claims and, confining its analysis to the discharge claims, ordered that Hasnudeen and Hines "shall recover nothing from defendant Onan Corporation on their claims." Because I believe that the trial court had the duty to decide the harassment claims, I respectfully dissent from that part of the court's decision which reinstates the judgment entered for Onan. I would remand to the trial court for resolution of the harassment claims.

In spite of its refusal to rule on their harassment claims, the trial court found that Hasnudeen's coworkers commonly referred

to him by racially derogatory names and that derogatory racial comments were made about the fact that Hasnudeen and Hines were dating each other. While Hasnudeen is a native of Guyana and is of East Indian descent, his coworkers regarded him as an African American because of his dark complexion. They referred to him with racial epithets, such as "Nigger Bob," "Midnight," "Sand Nigger," and "Black Bob." In addition, after coworkers became aware that Hasnudeen was dating Hines, who is half Native American, they began to make racially offensive comments about the relationship. For example, Hasnudeen testified that one coworker asked him, "How was the squaw?" and another asked if he had "ever been to a pow-wow with the squaw." Hasnudeen asserted that both comments were meant in a sexual sense. Hines testified that two female coworkers warned her that Guyanese men beat women and encouraged her to "try to find a nice white boy." Another coworker once told Hines "that the guys that he worked with in shipping were asking him if [Hines] was still f---ing the snot out of the nigger." Other coworkers referred to Hines as a "nigger lover" and commented that Hines was "going to find herself in trouble and stuff, going out with that nigger." Hines' half-sister, who also worked at Onan, testified that coworkers even harassed her because of the relationship and would "ask me if it runs in the family and if I do niggers too." Hines frequently became upset by the racially offensive comments and, on one occasion, was crying so hard that she had to leave work. Hines reported the alleged harassment to Hasnudeen, the lead worker on her shift, and Hasnudeen claims that he reported the problem several times to other supervisors, but the allegations were never investigated.

Further, some coworkers told Hines that Hasnudeen was making derogatory comments about her. When Hines confronted Hasnudeen, he denied making the statements and told her that it would stop. The trial court found that it "was just such a derogatory comment that upset plaintiff Hines on the night of the incident." Hines had become upset when a coworker told her that Hasnudeen had remarked that all she was to him "was just a good f---." This remark sparked the altercation that led to Hasnudeen's and Hines' discharge. Although Hasnudeen and Hines told Onan supervisors why Hines had become so upset and about other derogatory things being said about them, these allegations were not investigated. According to Hines, one supervisor responded to her claims of harassment by telling her that she should consider quitting if she did not feel that Onan was the right place for her. The trial court commented that "Onan's supervisors probably should have investigated those rumors and disciplined employees who were saying such things."

While the trial court stated that Hasnudeen and Hines "may have had the potential for a 'hostile work environment' claim," the trial court concluded that Hasnudeen and Hines "shall recover nothing." The trial court refused to consider the harassment claims, stating that "the claim before us is for discriminatory *discharge*, not hostile work environment." (Emphasis in original.) Further, when Hasnudeen and Hines brought a motion for amended findings or, alternatively, a new trial on the basis that they had claims of a hostile work environment in addition to the claims of discriminatory discharge, the trial court accused them of attempting to recast their claims and assert a different theory, stating that "the real issue throughout the trial—the one which the parties actually litigated and argued—was whether defendant Onan *discharged* plaintiffs for improper reasons." (Emphasis in original.)

The trial court's summary disposition of the harassment claims is astounding. Courts are to construe pleadings liberally, particularly in civil rights cases. *L.K. v. Gregg*, 425 N.W.2d 813, 819–820 (Minn.1988). Here, the complaint expressly alleges harassment:

That Defendants jointly and severally discriminated against Plaintiff Robert Hasnudeen because of his race, color and national origin and *engaged in continual harassment*, reprisals and subsequently terminated Robert Hasnudeen because of his race,

color and national origin in violation of Minn.Stat. § 363.03 Subds. 1 and 7.[1]

. . . . .

That Defendants jointly and severally discriminated against Plaintiff Tracy Hines and *engaged in harassment,* reprisals and subsequently terminated her because of her association with a person of a different race, color and national origin and that said *continual harassment,* reprisals and subsequent termination are in violation of M.S.A. 363.03 Subd. 7.

(Emphasis added.) Onan clearly knew or should have known that Hasnudeen and Hines were alleging claims of harassment in addition to their claims of discriminatory discharge. Beyond the complaint, the allegations of harassment were explored in interrogatories to Hasnudeen and Hines by Onan, and during the direct and cross-examination of Hasnudeen and Hines at trial,[2] as well as during the testimony of several witnesses.

The trial court heard extensive testimony regarding the racial epithets commonly used in reference to Hasnudeen and the racially offensive comments made about his relationship with Hines. The trial court credited this testimony and concluded, as previously indicated, that Hasnudeen and Hines "did indeed work in a racially-charged atmosphere." Nevertheless, the trial court denied relief, apparently on the basis that the harassment claims had not been sufficiently emphasized during trial. This represents an overly formalistic approach to human rights claims, particularly in a bench trial where the

---

1. The relevant provisions of Minn.Stat. § 363.03, subds. 1 and 7, read as follows:

    **363.03 UNFAIR DISCRIMINATORY PRACTICES.**

    Subdivision 1. **Employment.** Except when based on a bona fide occupational qualification, it is an unfair employment practice:

    . . . . .

    (2) For an employer, because of *race, color,* creed, religion, *national origin,* sex, marital status, status with regard to public assistance, membership or activity in a local commission, disability, sexual orientation, or age,

    . . . . .

    (c) to discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, *conditions,* facilities, or *privileges* of employment.

    . . . . .

    Subd. 7. **Reprisals.** It is an unfair discriminatory practice for any employer * * * to intentionally engage in any reprisal against any person because that person:

    . . . . .

    (2) Associated with a person or group of persons who are disabled or who are of [sic] different *race, color,* creed, religion, sexual orientation, or *national origin.*
    (Emphasis added.)

2. For example, Onan served, and both Hasnudeen and Hines answered, separate interrogatories regarding their claims that:

    Onan *"engaged in continual harassment* and reprisals of plaintiff Robert Hasnudeen because of his race, color and national origin" (Interrogatory 2 (emphasis added));
    "Robert Hasnudeen was terminated because of his race, color and national origin" (Interrogatory 3);

    Onan *"engaged in harassment* or reprisals against plaintiff Tracy Hines because of her association with a person of different race, color or national origin" (Interrogatory 5 (emphasis added));
    "Tracy Hines was terminated because of her association with a person of a different race, color, or national origin" (Interrogatory 6).
    In answering the interrogatories regarding the allegations of harassment, Hasnudeen and Hines described many of the incidents of harassment to which they testified at trial.
    At trial, Onan responded to these claims in part by attempting to show that Onan was not notified or otherwise aware of the harassment. On cross-examination, counsel for Onan questioned Hines about whether she reported any of the derogatory comments to a supervisor other than Hasnudeen and whether she was aware that there was a procedure outlined in the employee handbook for reporting harassment. Similarly, counsel for Onan questioned Hasnudeen on cross-examination about whether he was aware of the procedure specified in the employee handbook on reporting harassment and discrimination, and whether, when the supervisors he complained to about the racially offensive comments did not respond, he contacted the EEOC coordinator in accordance with the employee handbook. Testimony was also elicited from supervisors at Onan regarding how complaints of harassment were handled and how information was conveyed to employees about reporting harassment.
    In addition to the allegations in the Complaint, Onan's interrogatories to Hasnudeen and Hines, and the testimony adduced at trial, the parties' Joint Statement of the Case and finding 1 of Judge Donald J. Venne's May 20, 1993, Findings of Fact, Conclusions of Law and Order reinstating Hasnudeen's and Hines' cause of action after dismissal for violation of a discovery order, make specific reference to the harassment claims.

racial epithets and offensive remarks were egregious, and the hostile work environment was closely tied to the incident that led to Hasnudeen's and Hines' discharge. Even if their claims of discriminatory discharge must fail, Hasnudeen and Hines pled, and to the extent the trial court found that they worked in a racially-charged atmosphere, proved their claims of harassment. They deserved to have those claims resolved by the trial court.

I am deeply troubled by the outcome of this case. Credited claims of a racially-charged work environment are left unresolved because of a trial court's narrow view of how overlapping claims should be presented at trial. Harassment was pled, relief was prayed for,[3] evidence was presented, defenses were offered, and findings were made. That the trial court did not address the merits of these claims is indefensible and, in my view, fosters the perception in communities of color across this state, as found by the Minnesota Supreme Court Task Force on Racial Bias in the Judicial System, that the system is flawed and stacked against them. In that task force report former Justice Rosalie E. Wahl said, "We who are the stewards of this justice system cannot fail the people it belongs to." We have failed them here. Therefore, I respectfully dissent from the court's decision, which, like the trial court, dismisses the harassment claims.

TOMLJANOVICH, Justice (concurring in part, dissenting in part).

I join in the dissent of Justice Page.

GARDEBRING, Justice (concurring in part, dissenting in part).

I join in the dissent of Justice Page.

---

3. WHEREFORE, Plaintiffs pray for the following:
   1. For reinstatement of their previous positions and at their former salary range.
   2. For compensatory damages for lost income, pension and insurance rights.
   3. *For compensation for mental anguish and suffering* in excess of Fifty Thousand and No/100 Dollars ($50,000.00).

   4. For reasonable costs and attorney's fees associated with the necessity of bringing this action.
   5. For such other relief as this Court deems appropriate.
   (Emphasis added.)