**In the Matter of the WELFARE OF D.M.D., Jr.**

**No. C4-98-1185.**

Supreme Court of Minnesota.

March 16, 2000.

---

Michael A. Hatch, Minnesota Attorney General, St. Paul, Amy J. Klobuchar, Hennepin County Attorney, Linda K. Jenny, Assistant Hennepin County Attorney, Minneapolis, for appellant.

William E. McGee, Fourth District Public Defender, Warren R. Sagstuen, Assistant Public Defender, Minneapolis, for respondent.

## OPINION

BLATZ, Chief Justice.

This is an appeal from a court of appeals decision reversing the juvenile court's grant of the prosecutor's motion to designate the juvenile court proceedings as an Extended Jurisdiction Juvenile (EJJ) prosecution. We reverse the court of appeals and affirm the juvenile court's EJJ designation.

On March 18 or 19 and June 21 of 1997, respondent D.M.D., Jr., then fourteen, was alleged to have penetrated an eight-year-old girl digitally and with his penis while babysitting her and her two siblings. On January 23, 1998, respondent was charged

with two counts of criminal sexual conduct in the first degree, pursuant to Minn.Stat. § 609.342, subds. 1(a), 2 (1998); Minn.Stat. § 609.101, subd. 2 (1998); and Minn.Stat. § 609.346, subd. 5 (1998). On February 26, 1998, the prosecutor filed a motion seeking designation of the case as EJJ pursuant to Minn.Stat. § 260.126, subd. 2 (1998).

As required by Minn. R. Juv. P. 19.03, subd. 1 and Minn.Stat. § 260.151 (1998), the juvenile court ordered an EJJ study and a psychological study of respondent. The state presented testimony from two psychologists that the additional two years of juvenile jurisdiction associated with EJJ designation were necessary because respondent could not complete needed treatment before his 19th birthday, when the juvenile court's jurisdiction would otherwise cease. The state's psychologists' EJJ recommendations were based on the severity of respondent's offenses, his high risk to reoffend, and his refusal to admit to the offenses. In contrast, the psychologist called by respondent testified that respondent was capable of completing treatment before his 19th birthday. However, the juvenile court judge found that respondent's psychologist's conclusion was based on the questionable assumption that respondent would admit to the offenses.

After conducting an EJJ hearing, the juvenile court found that the statutory factors used to determine whether granting EJJ designation will serve public safety were split evenly. *See* Minn.Stat. § 260.125, subd. 2b (1998). Nevertheless, the court found that EJJ designation was warranted, due primarily to the state's psychologists' testimony that EJJ was necessary for the full treatment of respondent. The court of appeals, however, reversed the juvenile court and held that in addition to the statutory factors, nonoffense related evidence of dangerousness is required for EJJ designation. *See In re Welfare of D.M.D., Jr.*, No. C4–98–1185, 1999 WL 107800, at *2–3 (Minn.App. Mar.2, 1999). Because the juvenile court did not specifically address nonoffense related evidence of dangerousness, the court of appeals reversed and remanded for findings of fact on such dangerousness. *See id.* at *3.

## I.

The question before us is whether the EJJ statute, Minn.Stat. § 260.126 (1998), requires evidence of nonoffense related dangerousness before an EJJ designation can be made on public safety grounds. The EJJ statute provides for extended jurisdiction in cases involving a juvenile alleged to have committed a felony. *See* Minn.Stat. § 260.126, subd. 1 (1998). In an EJJ prosecution, upon a finding of guilt or entry of a guilty plea the juvenile is given both an adult criminal sentence and a juvenile disposition. *See* Minn.Stat. § 260.126, subd. 4 (1998). The adult sentence is stayed on the condition that the juvenile does not violate the terms of the disposition or commit a new offense. *See id.* EJJ designation extends the juvenile court's jurisdiction until the juvenile reaches 21 years of age, as opposed to the usual limit of 19 years. *See* Minn.Stat. § 260.181, subds. 4(a), (b) (1998).

The statute provides for three types of EJJ prosecution: automatic, presumptive, and designated. *See* Minn.Stat. § 260.126, subd. 1. This case involves the third type, in which the prosecutor requests that a proceeding be designated an EJJ prosecution. On the prosecutor's motion, a pretrial hearing is held at which the prosecutor must show by clear and convincing evidence that EJJ designation will serve public safety. *See* Minn.Stat. § 260.126, subds. 1(3), 2 (1998). To guide courts in their determination of whether EJJ designation serves public safety, the statute references subdivision 2(b) of the adult certification statute, which sets forth six factors for courts to consider when certifying a juvenile for prosecution as an adult on public safety grounds. *See* Minn.Stat. §§ 260.126, subd. 2; 260.125, subd. 2b. If the prosecutor proves that public safety

will be served by EJJ designation, the court must grant the motion. *See* Minn. Stat. § 260.126, subd. 2.

In order to address the issue of whether the EJJ statute requires evidence of non-offense related dangerousness, a review of the history of the adult certification statute, which contains the public safety factors referenced by the EJJ statute is helpful. *See* Minn.Stat. §§ 260.126, subd. 2; 260.125, subd. 2b. While the EJJ statute was first enacted in 1994, Minnesota has had laws allowing for juveniles to be certified for trial as adults in certain cases since 1917. *See* Act of Apr. 20, 1917, ch. 397, § 21, 1917 Minn. Laws 570. When adopting the EJJ statute, the legislature also amended the certification statute to include specific factors for courts to consider when certifying juveniles as adults on public safety grounds. *See* Minn.Stat. § 260.125, subd. 2b. In contrast, the former certification statute merely provided that certification was proper if "[t]he court finds that the child is not suitable to treatment or that the public safety is not served under the provisions of laws relating to juvenile courts." Minn.Stat. § 260.125, subd. 2(d) (1969).

Because the former certification statute did not define what constitutes a threat to public safety, this court in *State v. Hogan,* 297 Minn. 430, 212 N.W.2d 664 (1973), set forth some criteria to guide courts' considerations:

> In determining if the public safety would be threatened, among the relevant factors to be considered are: (1) The seriousness of the offense in terms of community protection; (2) the circumstances surrounding the offense; (3) whether the offense was committed in an aggressive, violent, premeditated, or willful manner; (4) whether the offense was directed against persons or property; (5) the reasonably foreseeable consequences of the act; and (6) the absence of adequate protective and security facilities available to the juvenile treatment system.

*Id.* at 438, 212 N.W.2d at 669–70. Applying these factors, this court determined in *Hogan* that the district court did not abuse its discretion in concluding that the nature of the juvenile appellant's offenses – he had been indicted for attempted first-degree murder and aggravated arson – evidenced a threat to public safety. *See id.* at 438, 212 N.W.2d at 670.

After *Hogan* was decided, this court was presented with an appeal from a certification order raising the specific question of whether a juvenile could be certified as an adult in the absence of any nonoffense related evidence of dangerousness. *See In re Welfare of Dahl,* 278 N.W.2d 316, 318 (Minn.1979). In *Dahl,* the court noted the standards for certification provided in the former statute were not effective in helping judges to determine if certification was warranted. *See id.* Juvenile court judges therefore "tended to be overcautious, resulting in the [certification] of delinquent children for criminal prosecution on the erroneous, albeit good faith, belief that the juveniles pose a danger to the public." *Id.* at 319. The juvenile in *Dahl,* for example, had apparently been certified based on nothing more than his age and alleged offense, neither of which satisfied the statutory requirements for certification. *See id.* at 320.

The court in *Dahl* therefore stated explicitly that the *Hogan* public safety factors were not intended to allow certification based solely on the juvenile's alleged offense. *See id.* at 320–21. In order to guide courts in the application of the certification statute, *Dahl* held that for a juvenile to be certified on public safety grounds, the "record must reflect more reasons portending future danger; otherwise [the juvenile] would be [certified] solely on the basis of the offense in question. * * * The record must contain direct evidence that the juvenile endangers the public safety for the statutory * * * standard to be satisfied." *Id.*

The *Dahl* decision was a statutory interpretation in which legislative intent was inferred from the fact that the certification statute did not lay out specific crimes for automatic certification or provide for automatic certification for juveniles of a certain age. Therefore, the court concluded that the legislature did not intend for juveniles to be certified solely on those bases. *See id.* at 320. Accordingly, *Dahl* held that certification on public safety grounds under the statute required direct evidence of nonoffense related dangerousness. *See id.* at 321.

Fifteen years after *Dahl,* in its 1994 amendments to the certification statute, the legislature substantially changed the "not suitable to treatment or that the public safety is not served" framework under which *Dahl* was decided.[1] *See* Act of May 5, 1994, ch. 576, § 13, 1994 Minn. Laws 940 (codified at Minn.Stat. § 260.125). In its place, the legislature retained the public safety grounds for certification but set forth six factors to guide courts in determining whether certification will serve public safety. *See id.* at 942. Section 260.125, subdivision 2b states:

> In determining whether the public safety is served by certifying the matter, the court shall consider the following factors:
>
> (1) the seriousness of the alleged offense in terms of community protection, including the existence of any aggravating factors recognized by the sentencing guidelines, the use of a firearm, and the impact on any victim;
>
> (2) the culpability of the child in committing the alleged offense, including the level of the child's participation in planning and carrying out the offense and the existence of any mitigating factors recognized by the sentencing guidelines;
>
> (3) the child's prior record of delinquency;
>
> (4) the child's programming history, including the child's past willingness to participate meaningfully in available programming;
>
> (5) the adequacy of the punishment or programming available in the juvenile justice system; and
>
> (6) the dispositional options available for the child.
>
> In considering these factors, the court shall give greater weight to the seriousness of the alleged offense and the child's prior record of delinquency than to the other factors listed in this subdivision.

*Id.* Since the enactment of the EJJ statute, this court has not addressed whether our prior holding, that certification on public safety grounds requires nonoffense related evidence of dangerousness, is applicable to EJJ designation on public safety grounds.

Although this is a case of first impression for this court, the issue has been presented to the court of appeals in several cases. *See In re Welfare of C.L.S.,* 558 N.W.2d 12 (Minn.App.1997); *In re Welfare of M.S.H.,* No. C1–95–1369, 1996 WL 5815 (Minn.App. Jan.9, 1996); *In re Welfare of S.W.N.,* 541 N.W.2d 14 (Minn.App.1995). Starting with *S.W.N.,* the court of appeals has consistently held that nonoffense related evidence of dangerousness is required for EJJ designation on public safety grounds. *See C.L.S.,* 558 N.W.2d at 14 (citing *S.W.N.*); *M.S.H,* 1996 WL 5815, at *2 (citing *S.W.N.*); *S.W.N.,* 541 N.W.2d at 17 ("We conclude that the same requirement of non-offense related evidence of dangerousness [in certification cases] applies to motions for EJJ designation."). Similarly, in the present case, the court of appeals followed *S.W.N.* in holding that nonoffense related evidence of dangerousness is required for EJJ designations on public safety grounds. *See D.M.D.,* 1999 WL 107800, at *3.

---

1. In the intervening years, the certification statute was amended to include specific crimes that carried a presumption of certification. *See* Act of Apr. 15, 1980, ch. 580, § 3–7, 1980 Minn. Laws 967, 967–68.

*S.W.N.*'s holding that nonoffense related evidence of dangerousness is required for EJJ designation on public safety grounds was based on the rationale that the legislature

> may have intended that the EJJ classification serve as a middle ground appropriate for some juveniles who could not be certified for adult prosecution. Such an intent would accommodate threshold requirements somewhat more relaxed than those required for certification. * * * A lower threshold does not necessarily mean, however, that EJJ designation should be permitted based solely on the charged offense * * *.

*S.W.N.*, 541 N.W.2d at 17. Therefore, the court of appeals concluded that the lower threshold for EJJ designation does not imply abandonment of the requirement of nonoffense related evidence of dangerousness. *See id.*

In developing the "lower threshold" theme, the court noted that the lower EJJ threshold can be seen in a textual comparison of the EJJ and certification statutes: For nonpresumption certification cases, "the prosecutor must show that retaining the child in the juvenile system *does not serve public safety* * * *; for EJJ designation * * * the prosecutor need only show that such designation *serves public safety* * * *." *S.W.N.*, 541 N.W.2d at 17 (emphasis in original). While stated differently, the statutory language appears to be a distinction without a difference in that the thresholds for both statutes seem to be the same, i.e., the prosecutor must prove public safety will be served by either certifying a juvenile to adult court or by granting an EJJ designation.

Moreover, the court of appeals' concern in *S.W.N.* that the "lower threshold" of EJJ designation might allow designation based solely on the charged offense seems to be misplaced. While the 2(b) factors pertaining to public safety heavily weight the seriousness of the alleged offense, the factors also take into account the juvenile's prior history and the available programs and dispositions. *See* Minn.Stat. § 260.125, subd. 2b.

■ That being said, we emphasize that the *Dahl* requirement of nonoffense related evidence of dangerousness arose from our interpretation of the former certification statute. In short, *Dahl* simply recognized that in enacting the former statute, the legislature did not intend certification to be based solely on age or offense. Since *Dahl* was decided, however, the legislature has significantly amended the statutory framework and provided public safety factors for courts to consider. We therefore hold that nonoffense related evidence of dangerousness not required by the statutory factors is not necessary for EJJ designation on public safety grounds. To the extent *S.W.N.* and its progeny are inconsistent with this holding, those decisions are overruled.

## II.

■ We must next determine whether the juvenile court in this case properly weighed the 2b public safety factors. We review under a clearly erroneous standard the juvenile court's finding that the prosecutor proved by clear and convincing evidence that public safety would be served by designating respondent's prosecution EJJ. *See In re Welfare of J.F.K.*, 316 N.W.2d 563, 564 (Minn.1982).

The juvenile court found that three of the public safety factors weighed against EJJ designation: (1) the child's prior record of delinquency; (2) the child's programming history; and (3) the dispositional options available. In contrast, the court found the three other factors weighed in favor of EJJ designation: (1) the seriousness of the offense; (2) the child's culpability; and (3) the adequacy of the punishment or programming available in the juvenile justice system. The seriousness of the offense and the prior record of delinquency are to be given greater weight than the other factors. *See* Minn. Stat. § 260.125, subd. 2b. However, these

two factors split for and against EJJ designation.

While the juvenile court found the factors split evenly, it nevertheless ordered EJJ designation because, in the court's view, "the determinative issue * * * is whether there is sufficient time to treat and monitor Respondent before his 19th birthday." The juvenile court's treatment of this factor – adequacy of available programming – was primarily based on the testimony of Dr. Janis Bremer and Dr. Rebecca Reed, for the state, and Ms. Jane Matthews for respondent. Bremer is a psychologist and a Hennepin County Juvenile Probation Officer; Reed is Senior Clinical Psychologist for Hennepin County Psychological Services, Court Services; and Matthews holds a Master's Degree in psychology and is President of Transition Place, an organization that treats adult and adolescent sex offenders.

The juvenile court found the opinions of Bremer and Reed, who testified that EJJ was necessary for respondent to have adequate time for treatment, to be more credible than that of Matthews. Matthews testified that respondent could be effectively treated within the standard juvenile jurisdiction time frame. The court found that respondent's consistent denial of the offense undermined the weight of Matthews' opinion, which the court found was based on the assumption that respondent would acknowledge the offense. In fact, the court found that "there is nothing in the record that indicates Respondent would acknowledge his offense and readily begin treatment."

Having reviewed the record, we hold that the juvenile court was not clearly erroneous in finding the testimony of the state's experts to be more credible than that of respondent's, and in determining that without an EJJ designation, there would be insufficient time to treat respondent. *See generally Hasnudeen v. Onan Corp.*, 552 N.W.2d 555, 557 (Minn.1996).

 Clearly, the EJJ statute's overriding purpose is to require the prosecutor to demonstrate by clear and convincing evidence that designating a proceeding an EJJ prosecution will serve public safety. The 2(b) factors provide guidance and must be applied but are not a rigid, mathematical equation. Juvenile courts should have the discretion to weigh the factors in the context they are presented, and then decide whether EJJ designation is warranted according to the clear and convincing standard set forth in the EJJ statute. *See* Minn.Stat. § 260.126, subd. 2. Here, the juvenile court's conclusion that public safety would be served by granting EJJ designation is not clearly erroneous.[2]

Reversed.

PAUL H. ANDERSON, Justice (concurring specially).

I concur in the opinion of the majority, but write separately to address the Fifth Amendment issue raised by the dissent. The juvenile court's detailed and extensive findings of fact make clear that the determinative fact in this case was not just D.M.D.'s refusal on the advice of counsel to acknowledge his conduct. The court, when deciding whether to designate this matter as an EJJ prosecution, was concerned about there being sufficient time to treat and monitor D.M.D. before his 19th birthday. In reaching its conclusion, the court found "the opinions of Dr. Bremer and Dr. Reed to be more credible than the

2. While disclaiming treatment of the six statutory public safety factors as a strict mathematical formula, the dissent would nonetheless in essence tally the district court's evaluation of the factors and give the "tie" to the appellant. The dissent's approach misinterprets the statutory guidance to the district court as a straightjacket narrowly limiting the court's discretion. Although three factors may favor designation and three not, that does not mean one of the factors cannot counsel so strongly for designation as to justify that conclusion. Similarly, that two factors are indicated by the statute as carrying more weight does not mean that another factor cannot tip the balance in favor of or against designation when those two factors cancel each other out.

opinion of Jane Matthews * * *." Drs. Bremer and Reed clearly state that their conclusions about the amount of time necessary to treat and monitor D.M.D. were based on much more than just D.M.D.'s refusal, for legal reasons, to acknowledge his conduct. I conclude that based on the record before us, the Fifth Amendment is not implicated and that the record supports a conclusion that the juvenile court's decision was not clearly erroneous.

GILBERT, Justice (concurring in part and dissenting in part).

I concur in Part I of the majority's analysis holding that evidence of nonoffense related dangerousness is not required for designation of a prosecution as an Extended Jurisdiction Juvenile (EJJ) prosecution on public safety grounds under Minn.Stat. § 260.126 (1998). However, I respectfully dissent from Part II of the majority's opinion, which concludes that the juvenile court's findings supporting EJJ designation in this case are not clearly erroneous.

The state has the burden to prove by clear and convincing evidence that an EJJ designation would serve the public safety. *See* Minn.Stat. § 260.126, subds. 1(3), 2 (1998). In spite of this burden, here, after acknowledging that the six factors of Minn.Stat. § 260.125, subd. 2b (1998) were evenly split, the juvenile court broke the tie and ruled in favor of the state. The court concluded that "[t]he determinative issue * * * is whether there is sufficient time to treat and monitor Respondent before his 19th birthday." In finding that the state had met its burden, the juvenile court simply restated and emphasized the fifth factor, "the adequacy of the punishment or programming available in the juvenile justice system," in order to break the tie. Minn.Stat. § 260.125, subd. 2b(5) (1998). The court thereby improperly gave that factor greater weight than the other factors. *See* Minn.Stat. § 260.125, subd. 2b (stating that in considering the six factors only "the seriousness of the alleged offense and the child's prior record of delinquency" shall be given "greater weight"). It was clear error for the juvenile court to reuse this evidence.

Even if the juvenile court considered all factors together in making the public safety determination without subscribing to a strict mathematical formula, the determination here amounts to clear error. Where the factors point equally in favor of and against EJJ designation, reweighing one factor does not help the state meet its burden of proof dictated by the statute, that of clear and convincing evidence. *See* Minn.Stat. § 260.126, subd. 2.

In finding that there was not sufficient time to treat respondent, the court relied upon the opinions of the state's experts, Dr. Bremer and Dr. Reed, finding them more credible than that of the defendant's expert, Ms. Matthews. Importantly, both the credibility determination and the conclusion regarding the extended amount of time needed for D.M.D.'s treatment were based on the evidence that D.M.D. had refused to acknowledge his conduct in this pre-plea or pretrial context. In fact, the juvenile court found that D.M.D. had "consistently denied" the offense.

However, on cross-examination, Dr. Bremer acknowledged that this denial was on advice of counsel:

Q. The ability of someone to be successful in sex offender treatment in large measure deals with accepting responsibility; isn't that correct?

A. That is one component.

Q. And when you had a conversation with [D.M.D.] he did not want to talk with you about the offense, right?

A. Correct.

Q. And he indicated to you that was on advice of me?

A. Yes.

I am concerned about the juvenile court's reliance on D.M.D.'s refusal to ac-

knowledge his conduct in this proceeding.[1] But without deciding the Fifth Amendment issues, it is the juvenile court's failure to investigate further into the nature of these denials that was clear error. There may be instances where denial or refusal to speak about or acknowledge a crime does not indicate an inability to accept responsibility for one's actions. The denial or silence may be removed as soon as the proceedings are finalized. Because the evidence reflects that D.M.D. refused to speak about the incident on advice of counsel, the evidence to support the finding that "extensive" treatment would be required "due to * * * Respondent's denial of the offense," is not reasonable and the finding is therefore clearly erroneous. *See Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn.1999) (holding that the absence of reasonable evidence supporting a finding makes that finding clearly erroneous).

I would affirm the decision of the court of appeals; however, I would do so on the grounds stated herein.

---

1. The issues of Fifth Amendment protection for and the admissibility of pretrial statements made to psychiatrists or psychologists during court-ordered examinations have not been decided by this court. *See generally Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (holding that statements made to a doctor during pretrial psychiatric examination for the purpose of determining defendant's competency to stand trial were not admissible during penalty phase of proceedings where defendant was not warned before the examination that he had a right to remain silent and that any statement he made could be used against him at a capital sentencing proceeding). Minnesota Rules of Juvenile Procedure 19.03, subd. 5 states that, "Any matters disclosed by the child to the examiner during the course of the [social, psychiatric, or psychological] study may not be used as evidence or the source of evidence against the child in any subsequent trial." However, here the statements made or refused to be made to the psychiatrists were not used subsequently but actually used during the designation hearing itself and became the "determinative issue" in the ultimate decision to designate the proceeding EJJ. As a result of this EJJ designation, a 48–month sentence at an adult prison "hangs over [D.M.D.'s] head" until his twenty-first birthday.