**In the Matter of the WELFARE OF C.L.S., Child.**

No. C5–96–641.

Court of Appeals of Minnesota.

Jan. 14, 1997.

John M. Stuart, Minnesota State Public Defender, Charlann E. Winking, Assistant State Public Defender, Minneapolis, for Appellant.

Raymond F. Schmitz, Richard W. Jackson, Jr., Olmstead County Attorneys, Rochester, for Respondent.

Considered and decided by CRIPPEN, P.J., TOUSSAINT, C.J., and WILLIS, J.

## OPINION

CRIPPEN, Judge.

Citing the requirements of Minn.Stat. § 260.126, subd. 2 (1994), appellant C.L.S. contends that the juvenile court lost its jurisdiction because an extended jurisdiction designation hearing did not take place within 90 days after the petition for that relief was filed. Appellant also challenges the sufficiency of the evidence for an extended jurisdiction juvenile designation. We vacate the untimely designation, but without prejudice.

## FACTS

In a delinquency petition filed on October 9, 1995, C.L.S. was charged with a felony-level offense, burglary in the third degree, a violation of Minn.Stat. § 609.582, subd. 3 (1994). This charge stemmed from his participation with another person in the entry of an unoccupied dwelling in August 1994, when appellant was 17 years of age. Appellant admitted that he took two cameras and a clock from the dwelling. Also on October 9, 1995, the Olmstead County Attorney's office filed a motion to designate the C.L.S. matter as an extended jurisdiction juvenile (EJJ) proceeding. The trial court first scheduled the EJJ designation hearing for November 1, 1995, but appellant failed to appear. The court ordered that an EJJ study be filed in 30 days and the EJJ hearing be held within 60 days.

On November 21, 1995, the corrections officer charged with preparing the EJJ study reported to the trial court that she had interviewed appellant but that the interview was prematurely terminated because of appellant's uncooperative attitude and behavior. On December 11, the officer reported that appellant continued to be uncooperative. The trial court ordered that appellant complete a psychological evaluation, sign any necessary releases, and rescheduled the EJJ hearing to January 31, 1996.

At the January 31 hearing appellant objected to the court's exercise of jurisdiction, arguing that the hearing was not held within the time limits set out in Minn.Stat. § 260.126, subd. 2 (1994). The court ruled (a) that it had jurisdiction to consider the EJJ matter and (b) that given appellant's age, he was not subject to adjudication and disposition within the juvenile system except in an EJJ proceeding. The court further observed that the hearing delay was not deliberate and that appellant was not prejudiced.

## ISSUES

1. Do prohibited delays in EJJ designation hearings require dismissal?

2. Does the evidence support the trial court's EJJ designation?

## ANALYSIS

1. Delay of Hearing

■ Under Minn.Stat. § 260.126, subd. 2 (1994), the trial court must hold an EJJ designation hearing within 30 days after the relief is requested, unless good cause is shown. If good cause is shown by the prosecution or the child, the court may extend the time for hearing up to an additional 60 days. *Id.* But the hearing "shall be held" within 90 days after the request is filed. *Id.*

In this case, an EJJ designation hearing was properly scheduled within 30 days, and the trial court for good cause postponed the hearing so that it would occur before January 1, 1996, still within 90 days from the date of respondent's motion for EJJ designation. Because of appellant's lack of cooperation, the completion of the EJJ study was delayed, the officer doing the study requested a continuance, and the court rescheduled the hearing to January 31, more than 90 days after respondent's date of filing.

■ It is evident, as appellant argues, that the statutory time limit in Minn.Stat. § 260.126, subd. 2, is stated in mandatory terms. The hearing "shall be held" within the prescribed 90 day period. Minn.Stat.

§ 260.126, subd. 2. And time is of the essence in juvenile matters; the circumstances of children change so quickly that it is important for their sake and others that the disposition of their case be made promptly. *In re Welfare of C.T.T.*, 464 N.W.2d 751, 753 (Minn.App.1991), *review denied* (Minn. Mar. 15, 1991).

The statutory limit does not contemplate the enlargement of time for an EJJ designation hearing after the 90–day period has expired. *See* Minn.Stat. § 260.126, subd. 2 (allowing an extension of time upon a showing of good cause only for the 30–day time limit). This deadline statute, as opposed to a rule of procedure, must be adhered to by the trial court. *See C.T.T.*, 464 N.W.2d at 753 (holding that although there was non-compliance with 45–day limit established by Minn. R. Juv. P. 30.02(a), appellate court was precluded, absent legislative authority, from imposing sanction of dismissal upon implementation of seemingly compulsory, unconditional time rules). There is no evidence that the legislature intended the time limit for the occurrence of the EJJ hearing within Minn.Stat. § 260.126, subd. 2, be extended by the district court for any reason.

■ While the trial court exercises control over general scheduling of hearings, the court remains subject to rules, statutes, and constitutional provisions when exercising its discretion. *McIntosh v. Davis*, 441 N.W.2d 115, 119 (Minn.1989) (citing *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). Thus, the statutory 90–day limit in Minn.Stat. § 260.126, subd. 2, is absolute and failure to vacate for a violation of this limit would conflict with the statute.

■ Appellant acknowledges that the time limit mandated in Minn.Stat. § 260.126, subd. 2, is not accompanied by a statement of sanction for violation of the limit. But because the legislature's mandate was violated, appellant would have us dismiss the case with prejudice. He asks for a reversal, or a final decision against jurisdiction to designate the case for EJJ proceedings. Given the state of existing statutory law, we conclude that appellant is not entitled to that relief.

Minn.Stat. § 260.181, subd. 4 (1994 & Supp.1995), is a recent restatement of statutory law on expiration of the jurisdiction of a juvenile court (together with a new statement of district court jurisdiction over certain adults who are accused of wrongdoing while juveniles). Under subdivision 4(c), the juvenile court has jurisdiction for EJJ designation over adults who are not yet 21 years old, but this provision also provides:

> The juvenile court lacks jurisdiction under this paragraph if the adult demonstrates that the delay was purposefully caused by the state in order to gain unfair advantage.

Minn.Stat. § 260.181, subd. 4(c). If a new petition is filed in this case before appellant reaches age 21, the juvenile court has continuing jurisdiction in the absence of a showing that delay has been purposefully caused to gain unfair advantage. Because jurisdiction of the juvenile court for an EJJ certification in this case has not yet expired under current statutory law and the legislature has seen fit to state a mandatory time rule but to withhold statement of a sanction for untimely proceedings, we reverse and vacate the trial court's EJJ designation without prejudice.

### 2. Extended Jurisdiction Juvenile Decision

■ The juvenile court's decision to certify a person for adult prosecution will not be reversed unless its findings are clearly erroneous so as to constitute an abuse of discretion. *In re Welfare of S.J.G.*, 547 N.W.2d 456, 459 (Minn.App.1996), *review denied* (Minn. Aug. 6, 1996).

If a child is 14 to 17 years old at the time of the charged offense, the prosecutor may move for an EJJ designation. Minn.Stat. § 260.126, subd. 1(3) (1994). At the subsequent hearing, the prosecutor must show by clear and convincing evidence that "designating the proceeding an [EJJ] prosecution serves the public safety." Minn.Stat. § 260.126, subd. 2. To show that an EJJ designation serves the public safety, the prosecuting authority must submit non-offense related evidence of dangerousness. *In re Welfare of S.W.N.*, 541 N.W.2d 14, 17 (Minn.App.1995), *review denied* (Minn. Feb. 9, 1996). In determining whether the public

safety is served, the juvenile court considers the following factors:

(1) the seriousness of the alleged offense in terms of community protection, including the existence of any aggravating factors recognized by the sentencing guidelines, the use of a firearm, and the impact on any victim;

(2) the culpability of the child in committing the alleged offense, including the level of the child's participation in planning and carrying out the offense and the existence of any mitigating factors recognized by the sentencing guidelines;

(3) the child's prior record of delinquency;

(4) the child's programming history, including the child's past willingness to participate meaningfully in available programming;

(5) the adequacy of the punishment or programming available in the juvenile system; and

(6) the dispositional options available for the child.

Minn.Stat. § 260.125, subd. 2b (1994); *see* Minn.Stat. § 260.126, subd. 2 (adopting factors from section 260.125, adult certification provision for EJJ purposes). The statutory listing of factors is accompanied by this declaration:

In considering these factors, the court shall give greater weight to the seriousness of the alleged offense and the child's prior record of delinquency than to the other factors listed in this subdivision.

Minn.Stat. § 260.125, subd. 2b.

■ Appellant's proceedings were designated as EJJ when he was age 19, based on a property crime that occurred when he was only 17 years of age. Appellant argues that the only basis for the EJJ designation was that he was beyond the age for juvenile court jurisdiction on the date of the hearing, a circumstance that arose because of the state's delay in charging him. Appellant further contends that respondent did not present any evidence as to the dangerousness of appellant and that the trial court never addressed the question of protecting the public safety or appellant's dangerousness as required by law. Thus, appellant asserts that the court's EJJ designation order based only on the age of appellant is contrary to applicable law and must be reversed.

■ It is evident that the legislature has stated EJJ designation factors that require more than the consideration of appellant's age. Both in the context of EJJ certification and certification of a juvenile case to adult court, it has been recognized that considerations of public safety go beyond factors of the immediate offense and the juvenile's age. *See In re Welfare of Dahl*, 278 N.W.2d 316, 320–21 (1979) (adult court certification); *S.W.N.*, 541 N.W.2d at 17 (EJJ certification). Rather, the juvenile court must consider non-offense related evidence of dangerousness, including the factors in Minn.Stat. § 260.125, subd. 2b, to determine if the EJJ designation serves the public safety.

We are convinced on the record before us in this case that the EJJ designation was not based solely on appellant's age, and that appellant's contention that the "non-offense related evidence of dangerousness" requirement has not been met is incorrect.

The trial court in its order touches on the factors listed in Minn.Stat. § 260.125, subd. 2b. The court lists each factor and applies it to appellant's situation. In doing so, the court details the following: (1) appellant's offense is serious and a felony if committed by an adult; (2) appellant is culpable, as he knowingly and voluntarily committed the crime; (3) appellant has a history of problems with authority; (4) he is not amenable to treatment; (5) given his age, appellant is no longer subject to adjudication within the juvenile system except EJJ; and (6) other than EJJ he has no other dispositional options.

Evidence supporting EJJ includes appellant's previous court contacts due to "uncontrollable behavior," foster home placement, assaultive and aggressive behavior displayed in placement, and alcohol and drug abuse. With regard to appellant's programming history, including his past unwillingness to participate meaningfully in available programming, there is substantial evidence that supports the trial court's EJJ designation.

The evidence shows that appellant has a history of placement into various shelters and homes, along with a history of discharge from these various shelters and homes for physical aggression. Appellant was placed in the Sheriff's Youth Program and subsequently discharged from that program after exhibiting aggression towards other residents. Appellant was also discharged from the Von Wald Shelter after it appeared he was physically threatening to the residents and staff members. During appellant's most recent placement, Doug Fattig's foster home, there was evidence that appellant assaulted another foster child. All this evidence was considered by the juvenile court. It was within the court's discretion to decide whether appellant would be helped by a juvenile adjudication and disposition based on this evidence. The court decided he would not and the evidence supports this conclusion.

These factors and the evidence of appellant's programming history considered by the court go adequately beyond appellant's age and to the dangerousness of appellant. Thus, we conclude that the trial court adhered to Minn.Stat. § 260.126 when designating appellant's case as an EJJ proceeding. Considering the broad discretion accorded the juvenile court, it cannot be stated that the court abused its discretion in making its determination.

**Reversed and vacated without prejudice.**