# ILLINOIS OFFICIAL REPORTS

## Supreme Court

*In re M.I.*, 2013 IL 113776

| | |
|---|---|
| Caption in Supreme Court: | *In re* M.I., a Minor (The People of the State of Illinois, Appellee, v. M.I., Appellant). |
| Docket No. | 113776 |
| Filed | May 23, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a motion was made to designate a juvenile proceeding as an extended jurisdiction juvenile prosecution, the statute calling for a hearing on the motion within 60 days was directory rather than mandatory, and failure to hold the hearing within that time did not invalidate an adult sentence subsequently imposed after the granting of the motion—*Apprendi* challenge to extended jurisdiction juvenile statute rejected. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Terrence V. Sharkey, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Emily E. Filpi, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz and Annette Collins, Assistant State's Attorneys, of counsel), for the People.

Lindsay E. Morgan, of DLA Piper LLP (US), of Chicago, for *amicus curiae* The Children and Family Justice Center.

Justices

JUSTICE GARMAN delivered the judgment of the court, with opinion.
Chief Justice Kilbride and Justices Freeman, Thomas, Karmeier, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1    Respondent, M.I., a minor, was adjudicated delinquent after the circuit court of Cook County found him guilty of three counts of aggravated discharge of a weapon and two counts of aggravated unlawful use of a weapon. Prior to trial, the State filed a motion to designate the proceedings as an extended jurisdiction juvenile (EJJ) prosecution pursuant to the Juvenile Court Act of 1987 (705 ILCS 405/5-810 (West 2008)). The trial court granted the motion and designated the case an EJJ prosecution. Following the respondent's adjudication as delinquent, the trial court sentenced the respondent to an indeterminate time in the juvenile division of the Illinois Department of Corrections (IDOC), which shall end no later than respondent's twenty-first birthday. The trial court also sentenced respondent to an adult sentence of 23 years in prison, which was to be imposed only if respondent failed to successfully complete his juvenile sentence. The appellate court affirmed. 2011 IL App (1st) 100865. This court allowed respondent's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). Respondent raises three arguments: (1) the statutory requirement to hold a hearing within 60[1] days of the filing of an EJJ motion is mandatory, and the failure to hold such a hearing renders respondent's adult sentence void; (2) the EJJ statute is unconstitutionally vague because it does not specify what conduct results in the revocation of the stay on the adult sentence; and (3) the EJJ statute violates the holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that the United States Constitution guarantees that all

---

[1]The EJJ statute sets the initial time limit for holding a hearing at 30 days, but the time can be extended to 60 days on a showing of good cause for the extension. For simplicity's sake, we will refer to the time limit as 60 days.

sentencing enhancements be proven beyond a reasonable doubt. For the following reasons, we affirm the judgment of the appellate court, which affirmed the circuit court's judgment.

¶ 2                                           BACKGROUND

¶ 3         A petition for adjudication of wardship was filed by the State against respondent on April 24, 2009. The petition charged respondent, 16 years old, with three counts of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2), (3) (West 2008)), one count of reckless discharge of a firearm (720 ILCS 5/24-1.5 (West 2008)), three counts of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1) (West 2008)) and one count of unlawful possession of firearms (720 ILCS 5/24-3.1(a)(1) (West 2008)). On May 5, 2009, the State filed a motion to designate the proceeding as an EJJ prosecution pursuant to section 5-810 of the Juvenile Court Act of 1987. The motion alleged that respondent was charged with offenses that would constitute felonies, whether committed by a juvenile or an adult, and that "[t]here [was] probable cause to believe that the minor committed the offenses" contained in the motion. The motion indicated the State would appear in court on May 7, 2009, to request a hearing on the motion.

¶ 4         Respondent's case was continued several times before the EJJ hearing was actually held. On May 7, 2009, the cause was continued to May 21, 2009, for status, on the agreement of both parties. On May 21, 2009, the State asked for 30 days to be ready for the hearing and the cause was continued to June 22, 2009, for hearing on the State's EJJ motion, without objection from defense counsel. On June 22, 2009, respondent's new counsel filed his appearance and the public defender's office withdrew from the case. The State answered "not ready" for the hearing because it was still waiting for some of respondent's school records. Defense counsel did not object and suggested July 6 as the new date; the case was continued for status to July 6, 2009. On July 6, 2009, the cause was continued for the EJJ hearing to August 12, 2009, without objection.

¶ 5         The hearing on the State's motion for EJJ designation was held on August 12, 2009, 98 days after the filing of the motion. At the hearing, the State proffered evidence supporting "probable cause" for the charges against respondent. The proffer included a recitation of what officers and witnesses would testify to if called to the stand concerning the basis for the charges. The defense also made a proffer as to what the officers and its witness would testify to that tended to favor the defense. The court then heard arguments from the parties on whether the State had established probable cause. The court found probable cause had been established. The hearing moved to the next phase for the court to determine whether there was clear and convincing evidence that the case should not be designated an EJJ prosecution. Here, the court was presented with evidence concerning: (1) the seriousness of the offense; (2) respondent's history of delinquency; (3) respondent's age; (4) the culpability of respondent in committing the offense; (5) whether the offense was committed in an aggressive or premeditated manner; and (6) whether respondent used or possessed a deadly weapon when committing the offense. 705 ILCS 405/5-810(1)(b) (West 2008). The State presented the testimony of respondent's juvenile probation officer. Following the State's examination of the officer and defense counsel's cross-examination and the parties'

arguments, the hearing concluded.

¶ 6    On September 1, 2009, the trial court found that, based on respondent's being 16 years old at the time of the offense and probable cause being established for the serious charges against respondent, a rebuttable presumption had been created that the case should be designated an EJJ prosecution. Thus, absent clear and convincing evidence that a stayed adult sentence along with a juvenile sentence would not be appropriate, the case would receive an EJJ prosecution designation. Following a recitation of the evidence presented at the EJJ hearing, the court found no clear and convincing evidence that a stayed adult sentence would be inappropriate. The court also noted that respondent had a previous conviction for aggravated unlawful use of a weapon in October 2008. Respondent was placed on probation for this conviction. The court granted the State's motion to designate the case an EJJ prosecution.

¶ 7    On October 15, 2009, respondent waived his right to a jury trial.[2] Respondent again waived his right on November 20, 2009. At respondent's December 2009 bench trial, the evidence revealed that Chicago police responded to a large fight involving 30 to 40 individuals in April 2009. The officers were in plain clothes, but their police badges were displayed on the outside of their clothing. Upon arrival at the scene, Officer Kevin Kelly yelled, "police, stop, stop, stop." Officer Kevin Kelly and Sergeant Thomas Mason testified that, moments after police arrived on scene, respondent fired multiple gunshots in their direction. The trial court found respondent guilty beyond a reasonable doubt of three counts of aggravated discharge of a firearm, two counts of aggravated unlawful use of a weapon, and reckless discharge of a firearm. Respondent's sentencing hearing was held on February 25, 2010. The trial court, in denying respondent's motion for a new trial, vacated respondent's conviction for reckless discharge of a firearm, finding that the shooting could not be both reckless and intentional. The court then merged the third count of the aggravated discharge charge into the first count. The court also merged the two counts of aggravated unlawful use of a weapon into the first aggravated discharge of a firearm conviction. The court stated it was sentencing respondent based on the two counts of aggravated discharge of a firearm. The court sentenced respondent "for an indeterminate period" to the juvenile IDOC to end no later than his twenty-first birthday. The court also imposed a 23-year adult sentence, which was stayed pending the successful completion of the juvenile sentence.

¶ 8    The appellate court affirmed respondent's conviction and sentence. 2011 IL App (1st) 100865. The court ruled that the evidence presented at trial was sufficient to find respondent guilty of aggravated discharge of a firearm. The court further found that the EJJ statutory provision setting forth a 60-day time frame for conducting a hearing on the State's motion to designate the case an EJJ prosecution was directory, not mandatory, and thus the failure to hold the hearing within 60 days in respondent's case did not vitiate the subsequent EJJ proceedings or stayed adult sentence. 2011 IL App (1st) 100865, ¶ 52. The appellate court also found that respondent did not have standing to challenge the revocation of the stay on

_____

[2]A different judge handled the jury waiver, bench trial, and sentencing than the judge who handled the EJJ motion.

his adult sentence on vagueness grounds, since no petition to revoke had been filed and the stay itself had not yet been revoked. 2011 IL App (1st) 100865, ¶ 61.

¶ 9 In March 2012 the State filed a petition to revoke respondent's stayed adult sentence pursuant to section 5-810(6) of the EJJ statute, alleging that respondent had committed a new offense, delivery of a controlled substance. 720 ILCS 570/401(c)(1) (West 2010). Respondent was convicted at jury trial of the drug offense in December 2012. The State's petition to revoke respondent's stay on the adult sentence has been stayed pending our decision in this case.

¶ 10                                             ANALYSIS

¶ 11 On appeal to this court, respondent raises three issues: (1) whether the requirement in the EJJ statute that the trial court hold a hearing on the State's motion to designate the case an EJJ prosecution within 60 days of the motion's filing is mandatory or directory; (2) whether the EJJ statute is unconstitutionally vague in how it defines the conduct that will invoke the imposition of the adult sentence and whether the statute fails to provide adequate guidance to authorities called upon to enforce its provisions; and (3) whether the EJJ statute violates *Apprendi* because it subjects a juvenile defendant to increased punishment without requiring a jury to find proof beyond a reasonable doubt as to the facts qualifying a juvenile defendant for EJJ prosecution.

¶ 12                          I. The 60-Day Hearing Requirement

¶ 13 Respondent contends that the provision in the EJJ statute that, upon the State's filing of a motion to designate the juvenile case an EJJ prosecution, requires that a hearing to be held within 60 days of the motion's filing is mandatory. Respondent further argues that because the 60-day requirement is mandatory, an adult sentence imposed pursuant to an EJJ hearing held outside the 60-day limit is void. The State counters that the 60-day hearing requirement is merely directory, and that a properly imposed adult sentence, even if rendered pursuant to an EJJ hearing held outside the 60-day limit, is not void.

¶ 14 The statutory provision at issue states:

"(2) Procedures for extended jurisdiction juvenile prosecutions. The State's Attorney may file a written motion for a proceeding to be designated as an extended juvenile jurisdiction prior to commencement of trial. Notice of the motion shall be in compliance with Section 5-530. When the State's Attorney files a written motion that a proceeding be designated an extended jurisdiction juvenile prosecution, the court shall commence a hearing within 30 days of the filing of the motion for designation, unless good cause is shown by the prosecution or the minor as to why the hearing could not be held within this time period. If the court finds good cause has been demonstrated, then the hearing shall be held within 60 days of the filing of the motion. The hearings shall be open to the public unless the judge finds that the hearing should be closed for the protection of any party, victim or witness. If the Juvenile Judge assigned to hear and determine a motion to designate an extended jurisdiction juvenile prosecution determines that there is probable cause to believe

-5-

that the allegations in the petition and motion are true, the court shall grant the motion for designation. Information used by the court in its findings or stated in or offered in connection with this Section may be by way of proffer based on reliable information offered by the State or the minor. All evidence shall be admissible if it is relevant and reliable regardless of whether it would be admissible under the rules of evidence." 705 ILCS 405/5-810(2) (West 2008).

¶ 15    "Whether a statutory command is mandatory or directory is a question of statutory construction, which we review *de novo*." *People v. Robinson*, 217 Ill. 2d 43, 54 (2005). When construing a statute, our primary objective is to ascertain and give effect to legislative intent, the surest and most reliable indicator of which is the statutory language itself, given its plain and ordinary meaning. *People v. Giraud*, 2012 IL 113116, ¶ 6. " 'In determining the plain meaning of statutory terms, we consider the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in enacting it.' " *Id.* (quoting *People v. Perry*, 224 Ill. 2d 312, 323 (2007)).

¶ 16    The parties agree that the question facing the court is whether the statutory provision is mandatory or directory, not mandatory or permissive. See *People v. Delvillar*, 235 Ill. 2d 507, 514 (2009) ("Resolution of this issue requires an explanation of two distinct questions that are, as this court has acknowledged, easily confused because they both contain the term 'mandatory.' "). Under the mandatory or directory question, "statutes are mandatory if the intent of the legislature dictates a particular consequence for failure to comply with the provision." *Id.* However, in the absence of such legislative intent "the statute is directory and no particular consequence flows from noncompliance." *Id.* at 515. There are consequences to a directory reading, but a directory reading "acknowledges only that no *specific* consequence is triggered by the failure to comply with the statute." (Emphasis added.) *Id.* In other words, the mandatory/directory question " 'simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates.' " *Robinson*, 217 Ill. 2d at 51-52 (quoting *Morris v. County of Marin*, 559 P.2d 606, 610-11 (Cal. 1977)).

¶ 17    "With respect to the mandatory/directory dichotomy, we presume that language issuing a procedural command to a government official indicates an intent that the statute is directory." *Delvillar*, 235 Ill. 2d at 517. This presumption is overcome, and the provision will be read as mandatory, under either of two conditions: (1) when there is negative language prohibiting further action in the case of noncompliance or (2) when the right the provision is designed to protect would generally be injured under a directory reading. *Id.*

¶ 18    Neither condition applies in this case. First, concerning negative language, section 5-810(2) lacks any negative language prohibiting further action if the hearing is not held within 60 days of the motion's filing. There are no specific consequences prescribed in the provision at issue, or for that matter any other subsection of section 5-810, for the court's failure to hold a hearing on the State's EJJ prosecution motion within 60 days of the motion's filing. Respondent conceded as much at oral argument. After the sentence providing that the hearing must be held within 30 days of the motion's filing, or within 60 days if the court finds the State or the minor has shown good cause for why it could not be held within 30 days, the statute states that the hearing should be open to the public. The rest of the provision details

the evidentiary and proof standards the court is to use in determining whether the case should be designated an EJJ prosecution. Thus, the EJJ statute itself does not contain specific consequences for noncompliance with its 60-day limit.

¶ 19       Although the provision states that "the court *shall* commence a hearing within 30 days of the filing of the motion for designation" (emphasis added) (705 ILCS 405/5-810(2) (West 2008)) "in no case regarding the mandatory/directory dichotomy has 'shall' controlled the outcome." *Robinson*, 217 Ill. 2d at 53. Whenever the mandatory/directory dichotomy is at issue, as in this case, the word "shall" is not determinative. *Robinson*, 217 Ill. 2d at 54. In *Robinson*, we were asked to interpret a provision in the Post-Conviction Hearing Act that addressed the procedures governing the circuit court when it determines that a postconviction petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2000). The statutory provision in question provided that the circuit court " 'shall dismiss the petition in a written order ***. Such order of dismissal is final and *shall* be served upon the petitioner by certified mail within 10 days of its entry.' " (Emphasis added.) *Robinson*, 217 Ill. 2d at 50 (quoting 725 ILCS 5/122-2.1(a)(2) (West 2000)). The circuit clerk failed to serve the defendant with the order of dismissal until 12 days after the court entered the order, thus not complying with the statutory language requiring service within 10 days of the judgment. *Id.* at 47. We found that the negative language exception did not apply, however, despite the legislature's use of the word "shall," as "the statute does not include negative words indicating that no dismissal shall occur or become effective unless the petitioner is timely served." *Id.* at 58. We found that, if the legislature had intended a different arrangement, it "could easily have written, for example, that no summary dismissal shall be entered unless the clerk timely serves notice of the court's intent to dismiss, or that no dismissal shall become a final order unless there is timely service." *Id.*

¶ 20       Similar to *Robinson*, the use of the word "shall" in section 5-810(2) does not indicate legislative intent to use negative language to make the provision mandatory. No specific consequences are detailed in the provision for failure to comply with the 60-day requirement. If the legislature had intended a different arrangement it could have written, for example, that any adult sentence imposed pursuant to an EJJ sentence is void if the hearing on the motion is held more than 60 days after the filing of the State's motion. See *Robinson*, 217 Ill. 2d at 58. We agree with the conclusion reached by the appellate court in this case, that "[t]he statute does not prohibit the trial court from conducting a hearing on the State's motion if the 30- or 60-day time frame has passed nor does it provide for a result, such as, a dismissal of the State's motion, if a hearing occurs after the designated time frame." 2011 IL App (1st) 100865, ¶ 51. The "negative language" exception does not apply to this case.

¶ 21       Respondent points to the use of "shall" and "may" in proximity to each other in section 5-810(6) to show that the legislature intended for "shall" to have a mandatory reading in the EJJ statute. Specifically, respondent cites to section 5-810(6)'s provision that, when the court finds a juvenile defendant has committed a new offense, the court "shall order execution" of the adult sentence, whereas if the juvenile defendant violates a condition of the EJJ sentence, the court "may order execution of the adult sentence." We disagree with respondent's interpretation. Respondent is confusing the mandatory/permissive dichotomy and the mandatory/directory dichotomy. In the case of section 5-810(6), "shall" is mandatory

-7-

in the sense that executing the adult sentence when the minor has committed a new offense is an obligation that a government entity is required to perform, while "may" is permissive, in that the court has a discretionary power concerning a juvenile defendant's violation of a condition of sentence where the court may or may not execute the adult sentence. See *Delvillar*, 235 Ill. 2d at 514. Similarly, the use of "shall" in section 5-810(2) is mandatory in terms of the mandatory/permissive dichotomy, in that the court has an obligation to hold a hearing on the State's EJJ motion. However, the mandatory/permissive and mandatory/directory dichotomy are two separate questions. *Delvillar*, 235 Ill. 2d at 514. Under the mandatory/permissive dichotomy, "shall" usually does indicate the legislature intended to impose a mandatory obligation, however under the mandatory/directory dichotomy, "shall" does not control the outcome. *Robinson*, 217 Ill. 2d at 53-54. The use of "shall" and "may" in section 5-810(6) does not dictate a finding that the legislature intended a mandatory reading for the use of "shall" in section 5-810(2) under the mandatory/directory dichotomy.

¶ 22    We further find the Minnesota Appellate Court decision of *In re Welfare of C.L.S.*, 558 N.W.2d 12 (Minn. Ct. App. 1997), *overruled on other grounds by In re Welfare of D.M.D.*, 607 N.W.2d 432 (Minn. 2000), cited by respondent, to be distinguishable. The Minnesota EJJ statute stated that the trial court must hold an EJJ designation hearing within 30 days after the relief is requested, unless good cause is shown, and, if good cause is shown by the prosecution, the court may extend the hearing up to an additional 60 days. *C.L.S.*, 558 N.W.2d at 13. However, the statute stated that "the hearing 'shall be held' within 90 days after the request is filed." *Id*. The Minnesota court held that "shall be held" meant that the time limit was mandatory. *Id.* To support its mandatory reading, the court cited the following: (1) the statute's use of "shall"; (2) the fact that "time is of the essence in juvenile matters"; and (3) the failure of the statutory limit to contemplate for an enlargement of time beyond the 90-day period. *Id*. at 14. However, the court rejected the juvenile defendant's request for dismissal of the EJJ designation with prejudice, noting that the Minnesota EJJ statute provides for juvenile court jurisdiction over a juvenile defendant until he or she turns 21, and concluded that "[i]f a new petition is filed in this case before appellant reaches age 21, the juvenile court has continuing jurisdiction in the absence of a showing that delay has been purposefully caused to gain unfair advantage." *Id*. The court held

> "Because jurisdiction of the juvenile court for an EJJ certification in this case has not yet expired under current statutory law and the legislature has seen fit to state a mandatory time rule but to withhold statement of a sanction for untimely proceedings, we reverse and vacate the trial court's EJJ designation without prejudice." *Id*.

¶ 23    We find *C.L.S.* to be distinguishable and unpersuasive in our analysis of the instant case. First, the court in *C.L.S.* appeared to place great importance on the use of "shall" in the statute. *Id*. at 13 ("It is evident, as appellant argues, that the statutory time limit in Minn. Stat. § 260.126, subd. 2, is stated in mandatory terms. The hearing 'shall be held' within the prescribed 90 day period."). In our own case law, however, whenever the mandatory/directory dichotomy is at issue, the word "shall" is not determinative. *Robinson*, 217 Ill. 2d at 54. Further, the Minnesota statute at issue in *C.L.S.* appears to be fundamentally

different from our own in that the juvenile court retains continuing EJJ jurisdiction over a juvenile defendant until that defendant turns 21, thus apparently allowing for the filing of an EJJ petition at *any time* before the juvenile turns 21. *C.L.S.*, 558 N.W.2d at 14. The court found the State could file a new petition before, during, or after the trial, as the Minnesota statute did not contain any prohibitory language on filing new petitions following dismissal for failure to abide by the 90-day limitation. *Id*. Our EJJ statute, by contrast, clearly limits the State to filing the EJJ petition *before* the trial. We find the Minnesota statute and the reasoning employed by the Minnesota court to be distinguishable from our own statute and case law in the instant matter.

¶ 24    We next ask whether the right that the statute intends to protect would be generally injured by a directory reading of the statute. *Delvillar*, 235 Ill. 2d at 518. However, before determining if the right to be protected would be generally injured by a directory reading of the statute, we must first determine what right the statute intends to protect. At oral argument, respondent contended that the right intended to be protected by the 60-day time frame was the respondent's right to have time to prepare and receive advice on legal strategy. The State, at oral argument, argued that the right to be protected was that the juvenile not be held in unnecessarily lengthy detention beyond a reasonable period of time and that the hearing take place in a reasonable amount of time before the trial. We agree with the appellate court that "[t]he right to be protected here is the right of a minor respondent to receive a hearing before being subject to an EJJ proceeding and a stayed adult sentence." 2011 IL App (1st) 100865, ¶ 52. The 60-day limit ensures that the hearing will be held in some reasonable time after the motion's filing and before the trial.

¶ 25    Respondent argues that his right to a fair hearing would be generally injured by a directory reading. Respondent argues that allowing a hearing to be held "indefinitely" outside the time limit puts the juvenile defendant in a state of uncertainty and affects his counsel's advice and preparation before trial. However, this uncertainty would exist even under a mandatory reading, because the EJJ statute allows the State to "file[ ] a petition, at any time prior to commencement of the minor's trial, to designate the proceeding" an EJJ prosecution. 705 ILCS 405/5-810(1)(a) (West 2008). Conceivably, the State could file an EJJ motion weeks before a trial was set to begin. This "uncertainty" would be left unaffected by a mandatory reading.

¶ 26    Respondent further argues that the State could use a directory reading as a litigation tactic to induce guilty pleas and also that a directory reading may lead to unnecessary delays. A proposed mandatory reading, however, could also lead to litigation tactics by the parties. A mandatory reading may force the State to "refile" an EJJ motion if a hearing could not be held within 60 days, and could end up allowing for dilatory tactics by a juvenile defendant who could intentionally delay the proceedings to put the hearing outside the 60-day limit. Further, a juvenile defendant could be harmed under a mandatory reading because concern over the 60-day limit could prevent the court from granting a continuance requested by the juvenile. Next, as to "unnecessary delay," we agree with the State that, under a directory reading, the trial court can maintain sufficient control over the proceedings to prevent the parties from occasioning purposeful delay through unwarranted continuances. A mandatory reading would remove discretion and control from the trial court, and (1) force the parties

to conduct a hearing for which they might not be fully prepared and (2) the court might not have in front of it all the best evidence to make a decision on the EJJ designation. A directory reading, in this case, preserves for the juvenile court the discretion and control of its docket in the handling of juvenile matters.

¶ 27 Respondent's right to receive a hearing before being subject to an EJJ proceeding and a stayed adult sentence was not injured. The statute provides that the juvenile defendant is entitled to notice of the EJJ motion filing and a hearing on the motion. 705 ILCS 405/5-810(2) (West 2008). Respondent received both in this case. Respondent has not shown how having the hearing occur outside the 60-day limit, but before trial, prejudiced him in any way. Respondent was properly notified of the motion's filing and his counsel received adequate time to prepare and argue against the motion.

¶ 28 We presume that language issuing a procedural command to a government official indicates an intent that the statute is directory. *Delvillar*, 235 Ill. 2d at 517. Because the EJJ statute does not contain negative language prohibiting further action in the case of noncompliance and the right the provision is designed to protect is not injured by a directory reading, we hold that section 5-810(2)'s requirement that a hearing on the State's EJJ designation motion be held within 60 days is directory. See *id.*

¶ 29                                              II. Vagueness

¶ 30 Respondent contends that the EJJ statute is unconstitutionally vague because it does not provide fair warning to the juvenile defendant of the conduct that will invoke the imposition of the stayed adult sentence. Respondent also argues that the statute fails to provide adequate guidance to authorities called upon to enforce its provisions. The State responds that the EJJ statute is neither facially vague nor is it vague as applied to respondent. The State further argues that respondent lacks standing to challenge the constitutionality of the EJJ statute on vagueness grounds.

¶ 31 Before addressing respondent's vagueness arguments on the merits, we must first determine whether respondent has standing to bring this constitutional challenge. Here, the State argues that, because the EJJ sentence has yet to actually be executed, respondent has yet to suffer any injury and he has yet to have, and may never have, his adult sentence enforced. Respondent counters that since the petition to revoke the stay of adult sentence has been filed, he is in immediate danger of sustaining a direct injury as a result of the statute's enforcement, and thus has standing.

¶ 32 "The purpose of the doctrine of standing is to ensure that courts are deciding actual, specific controversies, and not abstract questions or moot issues." *In re Marriage of Rodriguez*, 131 Ill. 2d 273, 279-80 (1989). In order to have standing to bring a constitutional challenge, a person must show himself to be within the class aggrieved by the alleged unconstitutionality. *People v. Morgan*, 203 Ill. 2d 470, 482 (2003), *overruled on other grounds by People v. Sharpe*, 216 Ill. 2d 481 (2005). "The general rule is that courts will not consider the validity of a statutory provision unless the person challenging the provision is directly affected by it or the unconstitutional feature is so pervasive as to render the entire statute invalid." *Morgan*, 203 Ill. 2d at 482; *People v. Palkes*, 52 Ill. 2d 472, 480 (1972).

"Generally, if there is no constitutional defect in the application of the statute to a litigant, that person does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations." *People v. Funches*, 212 Ill. 2d 334, 346 (2004). In the absence of facts demonstrating an unconstitutional application of the statute, a person "may not challenge the statute on the ground that it might conceivably be applied unconstitutionally in some hypothetical case." *People v. Wisslead*, 108 Ill. 2d 389, 397 (1985). Rather, a person must be directly or materially affected by the attacked provision and must be in immediate danger of sustaining a direct injury as a result of enforcement of the challenged statute. *People v. Rogers*, 133 Ill. 2d 1, 8-9 (1989). "Standing is an element of justiciability, and it must be defined on a case-by-case basis." *People v. Greco*, 204 Ill. 2d 400, 409 (2003).

¶ 33    In the instant case, the State has filed a petition to revoke the stay of the adult sentence. Thus, we need not decide whether the filing of a petition to revoke is necessary in every case for a juvenile to have standing to challenge the constitutionality of section 5-810(6) of the EJJ statute. Further, we need not address the State's contention that standing cannot arise until such a petition is actually granted because the respondent in the present case would lack standing even if the petition to revoke had been granted.

¶ 34    "A party may not raise a constitutional challenge to a provision of a statute that does not affect him or her." *In re Veronica C.*, 239 Ill. 2d 134, 147 (2010); *People v. Malchow*, 193 Ill. 2d 413, 425 (2000); *Rogers*, 133 Ill. 2d at 15. However, that person may raise a constitutional objection to the other part where its invalidity will render the entire statute void. *People v. Mayberry*, 63 Ill. 2d 1, 6 (1976). The State notes in its brief that "the petition to revoke was based solely on respondent's commission of a new felony offense" and that "[t]he State has never alleged that respondent violated any of the 'conditions' of his juvenile term." Therefore, if the basis for the respondent's challenge to the statute's constitutionality does not pertain to the basis for the revocation of the adult sentence contained in the actual petition, respondent will not have standing.

¶ 35    In *Veronica C.*, the juvenile defendant attacked the constitutionality, on separation of powers grounds, of the statute that prevented the juvenile defendant from being placed on supervision by the court without the consent of the State. This court found the juvenile defendant had no standing to make the constitutional claim, however, because her counsel's failure to raise the possibility of supervision prior to the court's finding of guilt meant that the juvenile defendant would not be entitled to supervision under the statute, regardless of whether the State's Attorney objected at sentencing. We found that "[t]he State's objection thereto during the phases that followed was irrelevant and thus did not adversely affect respondent." *Veronica C.*, 239 Ill. 2d at 147. We concluded that "respondent lacks standing to challenge the constitutionality of the statutory provision in question because she was not adversely affected by its operation." *Id.* at 150.

¶ 36    We find the present case analogous to the situation presented in *Veronica C.* Even if the filing of the petition to revoke the stay on the adult sentence conferred standing on respondent to challenge the constitutional validity of the revocation provision of the EJJ statute, respondent's constitutional objection must still pertain to the part of the statute that *affects him*. See *id*. at 147. The EJJ statute allows for two ways in which the stay of the adult

sentence may be revoked: when the convicted minor "violate[s] the conditions of his or her sentence, *or* is alleged to have committed a new offense." (Emphasis added.) 705 ILCS 405/5-810(6) (West 2010). These are two separate provisions, albeit within the same statutory subsection. In fact, the subsection even provides that the court is to treat these two provisions differently in terms of executing the adult sentence. If the minor is found, by a preponderance of the evidence, to have committed a new offense, the court *shall* order execution of the previously imposed adult sentence, but if the minor is found to have committed a "violation" of his or her sentence "*other than by a new offense*, the court *may* order execution of the previously imposed adult criminal sentence *or may continue him or her on the existing juvenile sentence with or without modifying or enlarging the conditions*." (Emphases added.) 705 ILCS 405/5-810(6) (West 2010). These are clearly two separate provisions. Respondent would be affected by the provision concerning a "new offense." Respondent argues only that the term "conditions" is vague and makes no argument that the phrase "new offense" carries any vagueness. The basis for the constitutional challenge must pertain to the alleged basis for revoking respondent's stayed adult sentence. We make no determination today whether a petition to revoke the stay must be granted or even filed to trigger standing, because respondent has made no showing that the alleged constitutional infirmity, the vagueness of the term "conditions," pertains to the part of the statute that affects him. See *Rogers*, 133 Ill. 2d at 15. Therefore, we find that he has no standing to make such a constitutional challenge.

¶ 37                                             III. *Apprendi* Violation

¶ 38     Respondent next argues that the EJJ statute is unconstitutional because it violates his right to due process as articulated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in that the facts that qualify the juvenile for EJJ prosecution are not required to be submitted to a jury for determination or proved beyond a reasonable doubt. The State counters that *Apprendi* does not apply to EJJ prosecutions, as the statute is dispositional, not adjudicatory, and that, even if *Apprendi* did apply, there is no *Apprendi* violation because the adult sentence imposed is determined only based on factors proven to a jury beyond a reasonable doubt.

¶ 39     Before addressing the merits of respondent's *Apprendi* claim, we must first address the State's forfeiture argument. The State argues that respondent has forfeited the *Apprendi* issue because he did not raise it in the trial court, appellate court, or in his petition for leave to appeal to this court. The first time respondent raised *Apprendi* was in his opening brief in this court. Indeed, failure to raise an issue in a petition for leave to appeal results in the forfeiture of that issue before this court. *People v. McCarty*, 223 Ill. 2d 109, 122 (2006). "However, as this court has noted in the past, a challenge to the constitutionality of a statute may be raised at any time." *Id.* at 123. Therefore, we will address respondent's *Apprendi* claim on the merits. Whether the EJJ statute violates *Apprendi* presents a question of law, which we will review *de novo*. *People v. Hopkins*, 201 Ill. 2d 26, 36 (2002).

¶ 40     In *Apprendi*, the United States Supreme Court "held a criminal defendant has the right to insist that any fact, other than the fact of a prior conviction, that increases his punishment

beyond the statutory maximum 'must be submitted to a jury, and proved beyond a reasonable doubt.' " *Lucien v. Briley*, 213 Ill. 2d 340, 344 (2004) (quoting *Apprendi*, 530 U.S. at 490). The Court addressed this issue again in *Ring v. Arizona*, 536 U.S. 584 (2002), where it "noted that the aggravating factors that allow imposition of the death penalty operate as 'the functional equivalent of an element of a greater offense.' " *People v. Adkins*, 239 Ill. 2d 1, 45 (2010) (quoting *Ring*, 536 U.S. at 609). The Court further developed its *Apprendi* doctrine in *Blakely v. Washington*, 542 U.S. 296 (2004). In *Blakely*, the defendant pleaded guilty to kidnapping. The facts admitted in the defendant's plea, standing alone, supported a maximum sentence of 53 months, but, pursuant to state law, the trial court imposed a 90-month sentence after making a "judicial determination" that the defendant had acted with "deliberate cruelty." *Id.* at 298. The State argued that there was no *Apprendi* violation because the relevant statutory maximum for a Class B felony like kidnapping was 10 years, far in excess of the 90-month sentence imposed by the trial court. The Court rejected this argument, holding:

" '[T]he statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. [Citations.] In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' [citation], and the judge exceeds his authority." (Emphases in original.) *Id.* at 303-04.

¶ 41    The provision of the EJJ statute relating to respondent's *Apprendi* argument states:

"(1)(a) If the State's Attorney files a petition, at any time prior to commencement of the minor's trial, to designate the proceeding as an extended jurisdiction juvenile prosecution and the petition alleges the commission by a minor 13 years of age or older of any offense which would be a felony if committed by an adult, and, if the juvenile judge assigned to hear and determine petitions to designate the proceeding as an extended jurisdiction juvenile prosecution determines that there is probable cause to believe that the allegations in the petition and motion are true, there is a rebuttable presumption that the proceeding shall be designated as an extended jurisdiction juvenile proceeding.

(b) The judge shall enter an order designating the proceeding as an extended jurisdiction juvenile proceeding unless the judge makes a finding based on clear and convincing evidence that sentencing under the Chapter V of the Unified Code of Corrections would not be appropriate for the minor based on an evaluation of the following factors:

(i) the age of the minor;

(ii) the history of the minor, including:

(A) any previous delinquent or criminal history of the minor,

(B) any previous abuse or neglect history of the minor, and

(C) any mental health, physical and/or educational history of the minor;

(iii) the circumstances of the offense, including:

(A) the seriousness of the offense,

(B) whether the minor is charged through accountability,

(C) whether there is evidence the offense was committed in an aggressive and premeditated manner,

(D) whether there is evidence the offense caused serious bodily harm,

(E) whether there is evidence the minor possessed a deadly weapon;

(iv) the advantages of treatment within the juvenile justice system including whether there are facilities or programs, or both, particularly available in the juvenile system;

(v) whether the security of the public requires sentencing under Chapter V of the Unified Code of Corrections:

(A) the minor's history of services, including the minor's willingness to participate meaningfully in available services;

(B) whether there is a reasonable likelihood that the minor can be rehabilitated before the expiration of the juvenile court's jurisdiction;

(C) the adequacy of the punishment or services.

In considering these factors, the court shall give greater weight to the seriousness of the alleged offense and the minor's prior record of delinquency than to other factors listed in this subsection." 705 ILCS 405/5-810(1) (West 2008).

¶ 42    In determining whether there is probable cause to believe the allegations in the State's motion, the juvenile court judge may receive information by way of proffer. This information is to be based on reliable information provided by the State or the minor, and all evidence is admissible if it is relevant and reliable, regardless of whether it would be admissible under the rules of evidence. 705 ILCS 405/5-810(2) (West 2008). However, unlike in non-EJJ juvenile cases, "[a] minor who is [the] subject of an [EJJ] prosecution has the right to trial by jury" and "[a]ny trial under this Section shall be open to the public." 705 ILCS 405/5-810(3) (West 2008). If the juvenile defendant pleads guilty, or is found guilty at trial by a judge or jury, the court imposes both a juvenile sentence pursuant to section 5-710 of the Juvenile Court Act *and* "an adult criminal sentence in accordance with the provisions of Chapter V of the Unified Code of Corrections, the execution of which shall be stayed on the condition that the offender not violate the provisions of the juvenile sentence." 705 ILCS 405/5-810(4) (West 2008).

¶ 43    Our appellate court has been uniform in holding that the EJJ statute does not violate *Apprendi*. *In re Christopher K.*, 217 Ill. 2d 348, 363 (2005); see *In re Omar M.*, 2012 IL App (1st) 100866, ¶¶ 48-65; *In re Christopher K.*, 348 Ill. App. 3d 130, 143 (2004); *In re J.W.*, 346 Ill. App. 3d 1, 10-12 (2004); *In re Matthew M.*, 335 Ill. App. 3d 276, 289 (2002). The appellate cases found that *Apprendi* did not apply to the EJJ statute because the EJJ statute was not an adjudicatory statute, but rather a *dispositional* one, in that "it does not determine a respondent's guilt or the specific sentence." *Omar M.*, 2012 IL App (1st) 100866, ¶ 59; *J.W.*, 346 Ill. App. 3d at 11-12 (finding EJJ statute does not violate *Apprendi* because it did

-14-

not modify or change the elements of the crime the juvenile defendant was charged with, convicted of, and sentenced under); *Matthew M.*, 335 Ill. App. 3d at 289 (an EJJ prosecution is like a transfer to adult court under section 5-805(2) and requires the trial court to make a procedural determination as to whether a juvenile should receive an adult sentence; the only difference is under the EJJ prosecution the adult sentence is stayed pending successful completion of the juvenile sentence; and because a trial court's designation of a case as an EJJ prosecution does not adjudicate guilt, due process would not require a jury to make such a procedural determination).

¶ 44        We agree with the reasoning put forth by our appellate court. The *Apprendi* decision requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Nothing in the EJJ statute runs afoul of *Apprendi*. An EJJ designation merely assigns the case a status of being serious enough that an adult sentence can be imposed if the juvenile defendant pleads or is found guilty. There is nothing in the EJJ statute that allows a defendant to be sentenced above the statutory maximum based on factors not proven to a trier of fact beyond a reasonable doubt. The statute even provides that, unlike in other juvenile cases, a defendant is eligible to have his or her case determined by a jury. 705 ILCS 405/5-810(3) (West 2008). The judge merely determines, in relation to the EJJ designation, whether the case qualifies for the EJJ. The adjudicatory determination of guilt is made by the trier of fact, who must determine whether the State has proven the required elements of the offense beyond a reasonable doubt. When the trial judge imposes the adult sentence following the determination of guilt, he only does so in accordance and pursuant to the Unified Code of Corrections. 705 ILCS 405/5-810(4) (West 2008). Whatever stayed adult sentence is imposed on the juvenile defendant is based on the criminal offense for which the juvenile was convicted by the finder of fact. The length of the sentence is only determined *after* the trial at the standard sentencing hearing and is based on the crime for which the juvenile defendant was convicted beyond a reasonable doubt by the trier of fact. The EJJ statute decides which forum will hear a juvenile defendant's case, but it does not determine a juvenile defendant's guilt or the specific sentence. *Omar M.*, 2012 IL App (1st) 100866, ¶ 58.

¶ 45        Respondent contends that cases such as *Matthew M.* and *J.W.* are outdated because they came out before the United States Supreme Court's decision in *Blakely*. Respondent argues that *Blakely* shows the "true teaching of *Apprendi* and its progeny is that due process is violated when an accused receives a sentence in excess of that which he could have received based on the fact finder's verdict alone" and that since respondent's 23-year sentence was in excess of the juvenile sentence, the facts which increased his punishment were required to be submitted to a jury and proved beyond a reasonable doubt.

¶ 46        We disagree that the EJJ statute is unconstitutional under *Blakely*. We have already held that the EJJ statute is dispositional, not adjudicatory, in nature. However, even if we were to apply *Blakely* and *Apprendi* to the EJJ statute, there is still no violation. Respondent cites to the fact that the 23-year sentence was in excess of the authorized juvenile sentence. However, for the purposes of *Apprendi*, the statutory maximum is not the juvenile sentence under the Juvenile Court Act, but rather the maximum sentence allowed by the offense

committed. *Omar M.*, 2012 IL App (1st) 100866, ¶ 63. Juveniles have neither a common law nor a constitutional right to adjudication under the Juvenile Court Act. *People v. P.H.*, 145 Ill. 2d 209, 223 (1991). The Juvenile Court Act "is a purely statutory creature whose parameters and application are defined solely by the legislature." *Id.* Thus, a juvenile hearing is not a matter of right, and the maximum sentence that could be imposed, based on the facts adduced at respondent's trial, was that authorized by the Unified Code of Corrections for the offense committed. See *J.W.*, 346 Ill. App. 3d at 11. In this case, respondent waived his right to a jury trial and was tried by the court, and found guilty beyond a reasonable doubt of, among other offenses, two counts of aggravated discharge of a firearm in the direction of a person the respondent knew to be a police officer. 720 ILCS 5/24-1.2(a)(3) (West 2008). A violation of section 24-1.2(a)(3) is a Class X felony, for which the sentence is between 10 and 45 years in the IDOC. 720 ILCS 5/24-1.2(b) (West 2008). The court found every element for the statutory sentence beyond a reasonable doubt and sentenced respondent to a total of 23 years, within the statutory range of the criminal offense committed by respondent. See *Omar M.*, 2012 IL App (1st) 100866, ¶ 64. *Apprendi* does not apply to the EJJ statute, and, even if it did, the statute would not be in violation of *Apprendi*'s holding.

¶ 47      Further, the United States Supreme Court has cautioned about extending *Apprendi* to areas that have been the historic domain of the states. *Oregon v. Ice*, 555 U.S. 160, 170-71 (2009) ("States' interest in the development of their penal systems, and their historic dominion in this area, also counsel against the extension of *Apprendi* that [defendant] requests. Beyond question, the authority of States over the administration of their criminal justice system lies at the core of their sovereign status. [Citation.] We have long recognized the role of the States as laboratories for devising solutions to difficult legal problems."). In the area of juvenile law, "[t]he Supreme Court has traditionally given states wider latitude in adopting particular trial and sentencing procedures for juveniles—including whether to have a jury trial at all." *State v. Rudy B.*, 243 P.3d 726, 735 (N.M. 2010) (citing *McKeiver v. Pennsylvania*, 403 U.S. 528, 550 (1971) (plurality op.) (holding that the right to a jury trial does not apply to juvenile proceedings)). A number of our sister states have rejected the application of *Apprendi* to juvenile court and sentencing schemes. See *Rudy B.*, 243 P.3d at 740 (holding that applying *Apprendi* to New Mexico's posttrial determination of whether a juvenile should receive an adult or juvenile sentence, based on factors found by the judge after a trial, "would interfere unnecessarily with New Mexico's traditional discretion in administering a system of juvenile justice"); *State v. Read*, 938 A.2d 953, 960 (N.J. 2008) (holding that the mere fact that a judge's determination of whether a juvenile's case should be tried in juvenile or adult court "can impact the length of a potential sentence does not convert that decision into a part of the sentencing process which under *Apprendi* and *Blakely* requires jury fact-finding beyond a reasonable doubt. This conclusion is supported by the decisions of every federal and state court that has considered the issue. [Citations.]"). While certainly possible that a state's juvenile court and sentencing system could violate *Apprendi*, the governing trend appears to recommend great caution when applying *Apprendi* in the juvenile court realm.

¶ 48      Therefore, we conclude that *Apprendi* does not apply to the EJJ statute, as it is dispositional, not adjudicatory, in nature. However, even if we were to apply *Apprendi*, the

EJJ statute would not be unconstitutional, because the juvenile defendant's actual adult sentence is determined based on the charged offenses being found by the trier of fact to have been proven beyond a reasonable doubt. Further, any extension of *Apprendi* to areas that have been the historic domain of the states, such as administration of juvenile justice, should be treated cautiously. The EJJ statute is not unconstitutional under *Apprendi*.

¶ 49                                CONCLUSION

¶ 50      The requirement that the court hold a hearing on the State's EJJ prosecution-designation petition within 60 days of the petition's filing is directory. Therefore, the court's failure to hold a hearing within the 60-day requirement does not void the stayed adult sentence. Further, respondent does not have standing to challenge the EJJ statute as unconstitutionally vague. Finally, the EJJ statute does not violate due process under the United States Supreme Court's decision in *Apprendi*. For the foregoing reasons, the judgment of the appellate court is affirmed.

¶ 51      Affirmed.

-17-