# Illinois Official Reports

## Appellate Court

---

### *In re L.O.*, 2016 IL App (3d) 150083

---

| | |
|---|---|
| Appellate Court Caption | *In re* L.O., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Kristyn S., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-15-0083 |
| Filed | November 1, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 14-JA-201; the Hon. David J. Dubicki, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Susan K. O'Neal, of Peoria, for appellant.<br><br>Jerry Brady, State's Attorney, of Peoria (Judith Z. Kelly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Louise Natonek, of Peoria, guardian *ad litem*. |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion.<br>Justices McDade and Wright specially concurred, with opinion. |

**OPINION**

¶ 1      The Department of Children and Family Services (DCFS) filed a juvenile petition, alleging that the minor child, L.O., was neglected and seeking to make the child a ward of the court. After hearings, the trial court found that the child was neglected and that the child's mother, respondent Kristyn S., remained dispositionally unfit. The trial court made the child a ward of the court, named DCFS as the child's guardian, and ordered respondent to complete certain tasks. Respondent appeals the dispositional order, arguing that the trial court had no authority to order her to complete the tasks assigned because a service plan had not yet been filed by the caseworker as required by statute. We affirm the trial court's judgment.

¶ 2                               FACTS

¶ 3      Respondent and Daniel O. (father) are the biological parents of the minor child, L.O., who was born in August 2014. At the time of L.O.'s birth, respondent informed hospital personnel that she had an open child welfare case with DCFS and that she had previously been found unfit in two juvenile court cases pertaining to her other children. In addition, the hospital staff tested L.O.'s umbilical cord blood and found it to be positive for cocaine. The hospital personnel contacted the DCFS hotline, and DCFS took protective custody of L.O. A few days later, the trial court held a shelter care hearing and granted DCFS temporary custody of L.O. L.O. was placed with his paternal grandparents.

¶ 4      DCFS subsequently filed a juvenile neglect petition as to L.O. in the trial court. The petition, as later amended, alleged that L.O. was a neglected minor because he had been subjected to an injurious environment in that: (1) respondent was previously found unfit in two other juvenile cases in April 2013, and there had been no subsequent finding of fitness; (2) respondent had not completed the services that would result in the return home of L.O.'s siblings or a finding of fitness; (3) respondent had a history of a substance abuse problem involving alcohol; (4) the father had a substance abuse problem involving cocaine, marijuana, and alcohol; (5) the father had a criminal history and was currently involved with the drug court program in Peoria County; and (6) L.O.'s umbilical cord tested positive for cocaine on the date of his birth. The father and respondent filed answers to the amended juvenile neglect petition and either stipulated to, or did not demand strict proof of, the allegations contained in the petition.

¶ 5      In December 2014, an adjudicatory hearing was held on the amended juvenile neglect petition. Respondent was present in court for the hearing with her attorney. The father, who was in prison, was not present at his own request. Based upon the parties' answers to the amended petition, certain exhibits that were presented (the medical and drug records and the trial court files from the prior juvenile cases involving respondent's other children), and a proffer from the State, the trial court found that L.O. was a neglected minor.

¶ 6      A dispositional hearing was held immediately thereafter. A dispositional report, one addendum, and an integrated assessment report (collectively referred to as the dispositional report or the report) had been prepared for the hearing by the caseworker. Respondent did not show up for her appointment with DCFS workers for the integrated assessment interview, so information that had previously been gathered had to be used for that portion of the integrated assessment. Of relevance to this appeal, the dispositional report indicated that the father was currently in prison. Respondent was living at times with her mother and at other times with her

new boyfriend. Respondent had previously been referred for the following services (presumably as a result of the prior juvenile court cases involving her other children): (1) to complete individual counseling, a domestic violence course, and a parenting course; (2) to perform random drug tests; and (3) to attend scheduled visits with her children. According to the report, for the most part, respondent had not been making progress on those services, although she had attended a few counseling sessions. At the end of the report, the caseworker recommended that respondent be ordered to complete most of the same services.

¶ 7 During the dispositional hearing, the caseworker was questioned by respondent's attorney about whether a service plan had been filed and about the services that he was recommending for respondent. The caseworker stated that the family had a service plan in place, but it had not been provided to the parties or to the court in this case because it had not been updated. In addition, the family had a visitation plan in place, which also had not been provided to the parties or to the court in this case. When specifically asked, the caseworker could provide no reason for why the visitation plan had not been distributed. When asked about the services he was recommending, the caseworker acknowledged that he had not yet referred respondent for a new substance abuse assessment and stated that he did not do so because he did not want to overwhelm respondent. The caseworker commented that in his experience, requiring too many services at one time was a setup for failure.

¶ 8 During the argument portion of the dispositional hearing, the State asked that the trial court adopt the caseworker's recommendations, as contained in the dispositional report, regarding the services or tasks that respondent should be required to complete. In addition to those services, the State also asked that respondent be required to obtain a psychological evaluation and to participate in an updated integrated assessment interview. Respondent's attorney argued against some of the services that had been recommended and asked the trial court to only assign those services that respondent actually needed. Respondent's attorney claimed that the caseworker had ignored the one problem that respondent was known to have—a substance abuse problem. Respondent's attorney pointed out that pursuant to the applicable statutes, the caseworker was supposed to file with the court a visitation plan within 10 days after the shelter care hearing and a service plan within 45 days after L.O.'s placement, but the caseworker had failed to do so. Respondent's attorney asked that the case be set for a hearing within the next 30 days for a review of those two documents.

¶ 9 When the trial court specifically asked the guardian *ad litem* (GAL) as to her position on the caseworker's failure to file the two documents within the time prescribed, the GAL responded that she did not see the need for the caseworker to do so, even if the statutes required it. When the State was asked about the matter, the State agreed that the filing was required and suggested that the court order the agency to file both documents within 15 days. The State suggested that it was not necessary for the court to hold a review hearing on the documents and that once the documents were filed, the parties could file the appropriate pleadings if there were any problems with the documents.

¶ 10 At the conclusion of the dispositional hearing, the trial court found that the father was unfit and that respondent remained unfit. The basis for the finding of unfitness as to respondent was listed in the order as the drug and alcohol problem that she was not addressing, her failure to successfully participate in services, and the fact that L.O. was born with cocaine in his system. The trial court made L.O. a ward of the court and named DCFS as L.O.'s guardian with the right to place L.O. As part of its dispositional ruling, the trial court ordered respondent to

complete several tasks, which were designed to correct the conditions that led to the adjudication and removal of L.O. Those tasks included: (1) to cooperate fully and completely with DCFS or its designee; (2) to obtain a drug and alcohol assessment and a psychological examination and to comply with the treatment recommendations contained therein; (3) to perform three random drug tests per month; (4) to successfully complete individual counseling, a parenting course, and a domestic violence course; (5) to obtain and maintain stable housing that was conducive to the safe and healthy rearing of the minor; (6) to visit with the minor as scheduled; (7) to participate in an updated integrated assessment interview; and (8) to abstain from taking alcohol or drugs that were not prescribed by a doctor.

¶ 11    After announcing its dispositional ruling and admonishing the parties as to their appeal rights, the trial court specifically questioned respondent's attorney—the same attorney that respondent now has on appeal—to make sure that she was not requesting a continuance of the dispositional hearing due to the lack of a filed visitation or service plan. The following conversation ensued:

> "THE COURT: [Counsel], I didn't interpret any of your remarks about the visitation plan or the service plan to in any[ ]way suggest or request that the dispositional hearing be continued. Am I right or am I not?
>
> [RESPONDENT'S ATTORNEY]: No.
>
> THE COURT: Oh.
>
> [RESPONDENT'S ATTORNEY]: I'm not asking. I'm asking that a final order be entered today.
>
> THE COURT: Okay. Thank you."

¶ 12    The trial court ordered DCFS to file and to distribute to the attorneys both the visitation plan and the service plan within 21 days. Both plans were filed with the court about 12 days later. For the most part, the action steps listed for respondent in the service plan were the same as the tasks that respondent had been ordered to complete as part of the dispositional order. Many of the tasks, however, were broken down into smaller component steps.

¶ 13    Respondent subsequently filed this appeal to challenge the trial court's dispositional order.

¶ 14                                                ANALYSIS

¶ 15    On appeal, respondent argues that the trial court had no authority, as part of its dispositional ruling, to order her to complete the tasks assigned because a service plan had not yet been filed by the caseworker as required by statute. Based upon the alleged lack of authority, respondent asks that we vacate the trial court's dispositional order, that we remand this case for the trial court to hold a new dispositional hearing, and that we direct the trial court to (1) follow the statute in the future regarding the filing of a service plan and (2) limit the services that respondent is ordered to complete to those found in the service plan, unless the trial court makes a specific finding as to why those services are not appropriate.

¶ 16    The State argues that the trial court's dispositional order—including the tasks assigned—was proper and should be affirmed. The State asserts that the statutory requirement regarding the filing of a service plan is directory and not mandatory and that the caseworker's failure to comply with that requirement within the time period specified did not deprive the

- 4 -

trial court of the authority, as part of its dispositional ruling, to order respondent to complete the tasks assigned.[1]

¶ 17    In general, on appeal in a juvenile neglect case, we will not reverse a trial court's dispositional determination unless its factual findings were against the manifest weight of the evidence or it committed an abuse of discretion by selecting an inappropriate dispositional order. *In re A.S.*, 2014 IL App (3d) 130163, ¶ 21. However, to the extent that we are called upon in this case to interpret the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2014)) to determine whether the trial court exceeded its authority under the Act, or to determine whether a requirement under the Act is mandatory or directory, we will apply a *de novo* standard of review in resolving those questions. See *In re N.C.*, 2014 IL 116532, ¶ 42 (as to the interpretation of the Act); *In re M.I.*, 2013 IL 113776, ¶ 15 (as to the mandatory or directory nature of a statutory requirement); *In re S.B.*, 305 Ill. App. 3d 813, 816-17 (1999) (as to whether the trial court exceeded its authority under the Act).

¶ 18    Respondent's claim of a lack of authority in this case is based upon sections 2-10.1 and 2-23(3) of the Act (705 ILCS 405/2-10.1, 2-23(3) (West 2014)). Section 2-10.1 provides that DCFS "shall" file a case or service plan within 45 days after a minor is placed in shelter care as provided for in section 2-10 of the Act (705 ILCS 405/2-10, 2-10.1 (West 2014)). The service plan is designed to, among other things, stabilize the family situation and reunify the family. See 20 ILCS 505/6a (West 2014). When appropriate, the service plan shall include a recommendation concerning evaluations for alcohol or drug abuse. See *id.* As part of its dispositional ruling in a juvenile neglect case, the trial court shall enter any other orders that are necessary to fulfill the service plan. 705 ILCS 405/2-23(3) (West 2014).

¶ 19    In this particular case, there is no dispute that DCFS did not file the service plan with the trial court within 45 days after L.O. was placed in shelter care as required under the statute. See 705 ILCS 405/2-10.1 (West 2014). There is also no dispute in this case that DCFS did not have the service plan on file at the time of the dispositional hearing, before the dispositional order was entered, or before respondent was assigned the tasks in question to complete. Thus, the question before this court becomes whether DCFS's failure to comply with the statutory command contained in section 2-10.1 of the Act deprives the trial court of the authority to order respondent to complete the assigned tasks. The answer to that question turns on whether the statutory command contained in section 2-10.1 is mandatory or directory in nature.

¶ 20    The mandatory/directory analysis is used to determine whether the failure to comply with a particular procedural step will invalidate the governmental action to which the procedural step relates. *M.I.*, 2013 IL 113776, ¶ 16. Under the mandatory/directory analysis, a statutory command is mandatory if the intent of the legislature dictates a particular consequence for failure to comply with the command. *Id.* Absent such legislative intent, the statute will be deemed directory, and no particular consequence will flow from noncompliance. *Id.* In conducting the mandatory/directory analysis, a court will presume that language issuing a procedural command to a governmental official indicates an intent that the command is directory, even if the command contains the word "shall." *Id.* ¶¶ 17, 19. However, the presumption of a directory reading will be overcome, and the command will be read as

---

[1]The State also asserts that the trial court's dispositional order did not constitute an abuse of discretion. We need not address that additional assertion, however, because respondent has only argued that the trial court lacked the authority to order her to complete the assigned tasks.

mandatory if either one of the following two conditions is present: (1) when there is negative language in the statute prohibiting further action or indicating a specific consequence in the case of noncompliance or (2) when the right the statute is designed to protect would generally be injured if a directory reading was given to the command. *Id.* ¶ 17; *In re Rita P.*, 2014 IL 115798, ¶ 44.

¶ 21 In the present case, after having reviewed the statutory language, we find that the procedural command contained in section 2-10.1 of the Act—that DCFS "shall" file a service plan with the court within 45 days after the minor's placement in shelter care—is directory and not mandatory. See *M.I.*, 2013 IL 113776, ¶¶ 16-17; *Rita P.*, 2014 IL 115798, ¶¶ 44-45. Although the word "shall" is used in the phrasing of the command, the remainder of the statute contains no negative language that prohibits further action or imposes a specific consequence in the event of noncompliance. See *M.I.*, 2013 IL 113776, ¶¶ 16-17, 19; *Rita P.*, 2014 IL 115798, ¶¶ 44-45. Respondent makes no argument to the contrary, nor does respondent claim that the right that the statute is designed to protect would be injured if a directory reading is given to the command. Therefore, the presumption that the statutory command is directory must be applied here. See *M.I.*, 2013 IL 113776, ¶ 17; *Rita P.*, 2014 IL 115798, ¶ 44. Because the statutory requirement is only directory, the fact that DCFS did not file a service plan within 45 days of placement or prior to disposition does not deprive the trial court of the authority to order respondent to complete certain tasks as part of its dispositional ruling. See *M.I.*, 2013 IL 113776, ¶ 16.

¶ 22 In rejecting respondent's argument in this case, we are mindful that at the dispositional hearing, respondent's attorney was specifically questioned by the trial court as to whether she was seeking a continuance because of the caseworker's failure to file the visitation and service plans. Respondent's attorney indicated that she was not seeking a continuance and stated that she was asking the trial court to enter a final order. Respondent cannot now complain on appeal that the trial court did just that. See *People v. Segoviano*, 189 Ill. 2d 228, 241 (2000) (a defendant cannot ask the trial court to proceed in a certain manner and then claim on appeal that it was error for the trial court to do so).

¶ 23 CONCLUSION

¶ 24 For the foregoing reasons, we affirm the judgment of the circuit court of Peoria County.

¶ 25 Affirmed.

¶ 26 JUSTICE McDADE, specially concurring.

¶ 27 I concur with the decision of this panel that "shall" in section 2-10.1 of the Act actually means "may." I concur because the unambiguous supreme court precedent cited by the author compels a finding that in this statute "shall" is merely directory and not mandatory.

¶ 28 I write separately to point out that, although there are no express negative consequences for a failure to file the service plan and visitation schedule within the statutorily prescribed time frame, *practical* negative consequences flowed from the caseworker's failure of compliance.

¶ 29 Although he testified that there were service plans and visitation schedules in the prior cases involving L.O.'s siblings, the caseworker conceded that nothing had been prepared specifically for the case of L.O. Moreover, he acknowledged that he had not yet referred

respondent for a new substance abuse assessment in this case because "he did not want to overwhelm respondent." When asked, the guardian *ad litem* expressed no concern about the failure to comply with the statute. Respondent's attorney initially pointed out the failure of compliance, noted that the caseworker's *oral* recommendations ignored the single problem that the respondent was known to have (substance abuse), and asked that the documents be filed and another hearing be scheduled within 30 days to review them. The attorney then ultimately waived all of these requests. Although our decision suggests that this waiver has some significance in this case, it is, in fact, totally irrelevant to a statutory construction. The State acknowledged the obligation to file, suggested a 15-day deadline for filing the documents, but denied that any hearing was necessary. Finally, as the opinion states in *supra* ¶ 10, "[one] basis for the [court's] finding of unfitness as to respondent was listed in the order as the drug and alcohol problem that she was not addressing." This would, of course, be the same drug and alcohol problem that had not been presented to her in a written service plan *in this case* and had not even been orally recommended so as not to overwhelm the respondent.

¶ 30    The sum of the foregoing is that, in reality, respondent was found unfit as to L.O. for failure to comply with a requirement imposed upon her in the cases of L.O.'s siblings, who had been previously removed from her custody. This violates the statutory requirement, confirmed by the supreme court, that each case involving one of multiple children of the same parent be resolved on its own facts. *In re Arthur H.*, 212 Ill. 2d 441, 468-69 (2004); *In re A.W.*, 231 Ill. 2d 92, 103 (2008) (" '[e]ach case concerning the adjudication of minors *** must be reviewed according to its own facts' " (quoting *In re Arthur H.*, 212 Ill. 2d at 468-69)).

¶ 31    The legislature has developed a comprehensive and structured scheme with interlocking requirements to help families repair insecure or unsafe relationships or, failing such repair, to allow the State to remove children from injurious environments to safe and stable homes within a time reasonable to promoting their best interests. The filing of documents in an appropriate sequence and time frame is an integral part of achieving that purpose. Neither DCFS nor the State nor the court should be allowed to pick and choose which parts of the statute should be followed and which can intentionally be ignored. To find otherwise is to risk undermining the legislative purpose and thwarting the legislative scheme. Viewed from this perspective, I believe it is conceptually wrong to find that (1) an actual filing (2) made in conformity with the statutory sequence and deadline is anything other than mandatory.

¶ 32    JUSTICE WRIGHT, specially concurring.

¶ 33    I agree with the author's conclusion that the procedural command contained in section 2-10.1 of the Act is directory. I write separately because, while I recognize the missed deadline failure does not affect the court's jurisdiction in this case, other potential negative consequences exist to deter noncompliance.

¶ 34    First, an employer may reprimand a caseworker for the failure to comply with a statutory deadline such as this. Second, the absence of a timely service plan may be asserted by a parent in support of a motion for a continuance or as a defense in another case. Nonetheless, the untimely service plan in this case is not outcome determinative because this mother consented to the adjudicatory order without raising the issue or requesting more time for compliance.